No. 2333.

E. L. BRIDGES AND WIFE *v.* JOHNSON & MULDROW.

1. LIMITATION—HOMESTEAD.—Naked possession of land for ten years of the character prescribed in the ten years statute of limitation, invests the possessor with a title as absolute as if it had been acquired by patent from the State, and on which he may sustain an action of trespass to try title. If the homestead of the family of one holding such possession is on the land, no part of it can be alienated by parol.

2. SAME.—A parol contract of sale can not be enforced against such possessor through the operation against him of an estoppel *in pais*, when the plaintiff setting up such estoppel was not caused by such parol contract to change his position for the worse, and when the possessor on his part acquired no right of property, of contract, or of remedy.

APPEAL from Grimes.   Tried below before the Hon. Norman G. Kittrell.

This suit was brought by appellants March 31, 1884, against appellees in trespass to try title to forty-seven feet by seventy-nine feet of land in lot 2, and thirty-six feet by seventy-nine feet of land in lot 3, all in block 118, in the town of Navasota, in Grimes county.

Appellees answered May 28, 1884: 1. Plea not guilty. 2. That Muldrow is owner of land described and Johnson is his tenant. 3. Three, five and ten years statutes of limitation. 4. Cross bill for damages for trees cut by plaintiffs.

In 1867 William Muldrow bought lot 1 in block 118 and went into possession, his vendor, White, locating the boundaries of the lot as running east and west in length and fronting on Leon street on the west. Muldrow enclosed the lot as pointed out to him, and put a house thereon and occupied it ever since. In 1879 appellant bought lots 2 and 3, in block 118, and he testified that in the winter of 1881 he informed Muldrow that the lots run north and south instead of east and west, and that he had a portion of appellant's lots 2 and 3 enclosed. Appellee testified that this information was given him in 1883. The map of Navasota shows that the lots run north and south instead of east and west, and that appellees' enclosure contained portions of lots 1, 2 and 3.

More than ten years after Muldrow had enclosed and occupied what he thought was lot 1, appellant Bridges went upon the ground to put a fence around lots 2 and 3. Muldrow and wife objected and claimed the land. Bridges had a conversation with them about it some weeks before. At the time Bridges went to build the fence the matter was adjusted, Muldrow agreeing to buy forty-seven by seventy-nine feet out of lot 2, and Bridges was to take thirty-six by seventy-nine feet out of lots 2 and 3, all being then enclosed in Muldrow's enclosure, and which had been so enclosed for ten years. (The court found as conclusion of fact that this adjustment had been made, but Muldrow and wife both testified that it was not.) Muldrow and wife were to pay fifty dollars for the land, ten dollars when papers were made and forty dollars in twelve and eighteen months. No papers were ever made, nor was there any money ever paid, but Bridges ran a fence across on a line on lot 3, and afterwards, in 1884, built a house and fence on lot 2. Afterwards

defendants, Muldrow and wife, took possession of the house on lot 2 and tore down the fence built by Bridges, and Bridges dispossessed them by sequestration at time this suit was brought. That both Muldrow and wife participated in the adjustment made with Bridges. Bridges lived near the property and passed it daily, saw the improvements of Muldrow and knew their location and extent. The property was the homestead of Muldrow and wife.

No jury being demanded, the trial was by the court, and judgment rendered for appellee for the land. It was admitted that appellee had had actual, open, adverse, notorious and continuous possession of the land enclosed by his fences for ten years prior to the alleged compromise agreement, which included the land in controversy. It was also admitted that Muldrow had a connected chain of title to lot 1, and had paid taxes thereon under recorded deeds for three and five years.

*H. H. Boone,* for appellants: That the parol agreement was binding on the parties, cited Houston v. Sneed, 15 Texas, 310; George v. Thomas, 16 Texas, 74; Love v. Barber, 17 Texas, 313; McArthur v. Henry, 35 Texas, 801; Hefner v. Wright, 57 Texas, 519.

*W. W. Meacham,* for appellee: That there was no *estoppel in pais,* he cited Ramey v. Allison, 64 Texas, 698; Moreland v. Atchison, 19 Texas, 310; Burleson v. Burleson, 28 Texas, 415, 416; Scoby v. Sweatt, 28 Texas, 730, 731; Page v. Arnim, 29 Texas, 72; 1 Story's Equity, sec. 386.

ACKER, JUDGE. The questions presented in this record are:

1. It being admitted that Muldrow had had peaceable and adverse possession of the land in controversy, cultivating, using and enjoying the same as a homestead for more than ten years, did he thereby acquire perfect title thereto, which could not be divested except in the manner prescribed by our statutes for conveying the homestead?

2. Was the parol adjustment entered into between Muldrow and wife and appellant binding, and are appellees thereby estopped to deny appellant's right to recover the parts of lots two and three that had been enclosed and occupied by appellees for more than ten years prior to the adjustment?

Naked possession for the length of time, and with the incidents

enumerated in the statute, invest the possessor with title to the land as fully and effectually as if the title had been acquired by patent, and a party who has had such possession for ten years may maintain an action founded on the title thus acquired. (Moody v. Holcombe, 26 Texas, 714.)

Muldrow having perfect title to the land embraced within his enclosure, being the head of a family, and the enclosure constituting his homestead, no part of it could be disposed of by parol. (Revised Statutes, article 560.) Appellant insists that appellees are estopped to deny his right to recover by reason of the parol adjustment entered into in 1881, such adjustment having been acted upon and acquiesced in by both parties. An estoppel *in pais* is the effect of the voluntary conduct of a party whereby he is precluded, both at law and in equity, from asserting the rights which might perhaps have otherwise existed, either of property, of contract or of remedy, as against another person who has, in good faith, relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy. (2 Pomeroy's Equity, sec. 804.)

It does not appear that appellant was led by the parol adjustment "to change his position for the worse," nor does it appear that appellees "acquired any corresponding right;" and we think the court did not err in holding that appellees were not estopped. If the parol adjustment had been valid and binding, it appears that appellant repudiated it by taking forcible possession of the land that appellees were to have by the terms of the adjustment, and that, too, without tendering a deed and demanding compliance upon the part of appellees.

We find no error in the record, and are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*

Opinion adopted February 7, 1888.