### MRS. L. C. PEASE v. BERGEN, DANIEL & GRACY.

#### No. 674.

**Title by Limitation.**—Possession from June, 1874, continuous and adverse, with regular payment of taxes. Holder of legal title died March 16, 1878. This suspended limitations for one year. Suit was brought in trespass to try title September 22, 1891. The tract contained 96 acres. *Held:*

1. Party in possession showed title under statute of limitation of ten years.

2. Statute having commenced against the holder of legal title, limitation did not stop by reason of minority or coverture of his children and heirs.

3. An entry made September 23, 1890, upon the land, which was terminated by eviction under action of forcible entry and detainer, had no effect. The title by possession had matured before the filing of the suit.

APPEAL from Travis. Tried below before Hon. W. M. KEY.

*Graham & Davies,* for appellant.—The peaceable and adverse possession of lands, tenements, and hereditaments, cultivating, using, and enjoying. the same for a period of more than ten years, by any one, gives such person the absolute and full title thereto; provided such possession does not extend to more than 160 acres, unless such lands are actually enclosed, on held under a deed or some memorandum of title duly registered; and if held under such deed or memorandum of title, the possession shall extend to the boundaries specified in the field notes in the same. Rev. Stats., arts. 3194, 3195, 3196; Pearson v. Boyd, 62 Texas, 541; Craig v. Cartwright, 65 Texas, 413; Word v. Drouthett, 44 Texas, 369; Smith v. Garza, 15 Texas, 150; Moody v. Holcomb, 26 Texas, 714; Melton v. Turner, 38 Texas, 81; Mooring v. Campbell, 47 Texas, 37.

As to immaterial breaks in possession between tenants: Elliott v. Mitchell, 47 Texas, 445; Whitehead v. Foley, 28, Texas, 1.

*West & McGown,* for appellees, denied the continuity of the possession.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought September 22, 1891, by appellees, Bergen, Daniel & Gracy, against L. C. Pease and Julia Pease, for 100 acres of land, a part of the Daniel Gilbert survey in. Travis County. Julia Pease disclaimed. L. C. Pease, the widow of E. M. Pease, who died in 1883, set up general denial, and pleas of three,

five, and ten years limitation to 96 acres of the land, described by metes and bounds.

A jury being waived, the case was tried by the court, and judgment was rendered for plaintiffs for that portion of the land not claimed by Mrs. Pease, and for an undivided one-sixteenth of the land claimed by her, and in her favor for the balance of the land claimed by her; to which judgment both parties excepted and gave notice of appeal. Mrs. Pease perfected her appeal. Both parties assign errors.

Plaintiffs deraign title as follows:

1. An agreement by both parties that Hart Samuels and Herman Mosson, composing the firm of Samuels & Mosson, and Elias Mosson, were the common source of title.

2. A deed by Francis Kelly and M. A. Kelly to Elias Mosson, Herman Mosson, and Hart Samuels to all of the Daniel Gilbert survey of one-third of a league (except certain 422 acres), of date 17th day of February, 1858. The firm of Samuels & Mosson was composed of Hart Samuels and Herman Mosson. They were first engaged in the grocery business and afterwards in the brewery business. In 1862 the firm moved to Mexico, and returned to Texas in 1865, after which they and Frederick Sutor went into the brewery business. Later on, Samuel & Mosson returned to Prussia, their native country, where they died. Sutor remained in Texas, and died March 16, 1878.

3. February 23, 1859, Elias Mosson executed a power of attorney to Hart Samuels and Herman Mosson, authorizing them jointly to convey certain lands, including the land in controversy.

4. On the 8th day of May, 1861, H. Samuels, assuming to act for Samuels & Mosson, executed a deed to Frederick Sutor, purporting to convey the land sued for, "all their right, title, and interest," with special warranty as to all persons claiming through or under them; deed duly recorded on day of date.

5. Frederick Sutor died March 16, 1878, leaving surviving him his wife, E. H. Sutor, whom he married prior to May 8, 1861, and the following children: (1) W. J. Sutor, born September 10, 1854; (2) Louisa A. Sutor, born April 8, 1856, married to Joseph Hofstetter May 1, 1874, and still his wife; (3) Emily W. Sutor, born March 21, 1858, married on 26th of December, 1884, to Frank Seery, and still his wife; (4) Fred G. Sutor, born April 5, 1862; (5) Matilda Sutor, born November 24, 1863, married October 13, 1886, to John Creaton, and still his wife; (6) Adele P. Sutor, born October 2, 1865; (7) Bertha A. Sutor, born November 16, 1867; and (8) Agnes L. Sutor, born March 1, 1870, married January 15, 1891, to Andrew Vogel, and still his wife.

6. August 26, 1880, Mrs. E. H. Sutor, W. J. Sutor, Bertha Sutor, Louisa A. Hoffstetter (joined by her husband), Agnes Sutor, and Emily

Seery (joined by her husband), executed a deed conveying the land sued for to plaintiffs.

Plaintiffs relied upon the foregoing facts for title.

Defendant Mrs. Pease relied upon the following facts for title to the land claimed by her:

On the 2nd day of October, 1863, H. Samuels executed an instrument in writing to Robert J. Townes, in which he represented himself as having authority to act for his partner and for Elias Mosson, and in which it is declared, that he "has this day sold to Robert J. Townes a tract of land containing 100 acres out of the Gilbert survey near Austin, in Travis County, which is more particularly described in the deed to said Townes, of even date herewith, and he has received from the said Townes the sum of $2500 in full payment for the same." The instrument stipulates, that as there is some question as to his authority to act for either of the parties, he binds himself to make good the sale and defend the title, and to indemnify Townes against all loss or damage sustained for want of authority to make the sale. This instrument was duly recorded May 18, 1873.

The deed mentioned to Robert J. Townes was not in evidence. If there ever was such a deed, it was lost; but there was some evidence tending to show its existence and genuineness, and that it conveyed the 100 acres of land in controversy.

September 17, 1865, Robert J. Townes executed to E. T. Eggleston a deed of trust, by which he conveyed to the trustee 1100 acres of land known as the Edgemont Place, including the land in suit, with the improvements, household and kitchen furniture, farming utensils, wagons, horses, cattle, hogs, etc., on the place, all for the benefit of his (Townes') children; which was properly recorded in Travis County, September 20, 1865.

By decree of the District Court of Travis County, dated June 23, 1874, the property of R. J. Townes, who died in 1865—the same property described in the trust deed to Eggleston—was partitioned between the heirs of Robert J. Townes, which set apart the land described in the answer of Mrs. Pease to Allen R. Townes as one of the heirs.

May 31, 1881, Allen Townes conveyed the same land claimed by Mrs. Pease to E. M. Pease, which deed was duly recorded in records of deeds of Travis County, June 21, 1881. E. M. Pease died in 1883, and by his will, duly probated, he devised the land to his wife, the defendant L. C. Pease.

Mrs. Mila T. Morris, a daughter of R. J. Townes and sister of Allen Townes, was guardian of his estate and had charge of the land set apart to him in the partition of his father's estate in 1874. Shortly after the judgment allotting to him the land, his guardian placed a tenant, one McWhirter, on the land (the 96 acres), who built a house thereon at once,

a brush fence around 6 acres, which was put in cultivation, holding as such tenant the entire tract of 96 acres. He had the right to cultivate as .much of it as he desired. He cut wood from the land not in cultivation, and used it in connection with that in cultivation. As such tenant he occupied the premises for several years, and when he left the place Mrs. Morris, as guardian of Allen, rented it to a colored woman, who occupied it for sometime, and it was then rented to some one else. There· was a tenant on the place all the time from the time McWhirter went on it until Allen Townes sold it to E. M. Pease, and very little intermission between any of the tenants. The rent being very little, tenants were· easily procured. The whole tract was rented to each tenant. The guardian paid the taxes for Allen Townes from 1874 to 1880, inclusive.

It was proved that E. M. Pease took possession of the land described in defendant's answer immediately upon his purchase from Allen Townes; put around the same a good, substantial plank and wire fence, with cedar posts, and began and continued to use the same as a pasture, paying all the taxes thereon until his death in 1883, and that defendant Mrs. Pease continued in possession of the same, using it as a pasture, paying all the taxes due thereon, to the time suit was brought.

It was in proof that one of the Sutors (W. J.) who joined in the deed to plaintiffs, on the 23rd day of September, 1890, cut the fence, put a gate therein, built a small house just inside the fence, and placed a tenant in the house, with instructions to hold the place for plaintiffs (defendant still using it as a pasture), and that said tenant remained there until July 30, 1891, when he was put off by writ of possession in favor of Mrs. Pease, the defendant.

There was proof tending to show that Robert J. Townes lived on the Edgemont Place prior to his death in 1865; that the land set apart to Allen Townes was a part of the Edgemont Place; that during the war Robert J. Townes had a small " Mexican house" on the land in suit, and that Mexicans lived on the same as his tenants for sometime; cut and hauled wood from it. The Edgemont Place was occupied by Townes up· to his death, after which it was occupied by his children until 1872, when it was occupied by a tenant until the tract was partitioned between the heirs of Townes, when the tract claimed by defendant was set apart to Allen Townes.

*Opinion.*—Under the facts as stated, the court below should have found that plaintiffs' cause of action was barred by the statute of limitations of ten years, and that Mrs. Pease was entitled to recover the entire survey described in her answer. Appellant's assignment of error to this effect should be sustained.

Without including the possession of Robert J. Townes, his children and their tenants, of the Edgemont Place, and the possession of the land in

suit by Mexican tenants, the evidence shows, without contradiction, that Allen Townes had possession of the land allotted to him by the decree of partition by tenants up to the time he sold to E. M. Pease, which possession was continued by him and the defendant up to the time of suit, except the temporary interruption, if it could be called such, on the 23rd day of September, 1890. The statute commenced to run in favor of Allen Townes in 1874 against Frederick Sutor, who died in 1878; and having so commenced, it continued to run against his children, who inherited his half of the land, though they were minors. In such case the pleas of infancy and coverture could not avail them or their vendee.

It is not shown that there was any administration upon the estate of Frederick Sutor, and the statute, put in motion before his death, was suspended for one year; but allowing this, and deducting it from the period of possession by Allen Townes, E. M. Pease, and Mrs. Pease, it must be held that the statute was in active operation against the claim of the Sutors and their vendees, the plaintiffs, for at least sixteen years before suit, which vested in defendant full title, precluding all claims, to the land claimed by her. Rev. Stats., arts. 3217, 3199; Moody's Heirs v. Moeller, 72 Texas, 635; Thompson v. Jones, 77 Texas, 626; Rev. Stats., arts. 3195, 3196; Pearson v. Boyd, 62 Texas, 544; Craig v. Cartwright, 65 Texas, 423; Bridges. v. Johnson, 69 Texas, 714; Charle v. Saffold, 13 Texas, 94.

The attempted interference with the possession of Mrs. Pease in 1890 by W. J. Sutor, if it should be held to have interrupted her possession, was immaterial, because her title by ten years possession was complete, and had vested before such temporary entry. Branch v. Baker, 70 Texas, 190; Bridges v. Johnson, 69 Texas, 716.

The conclusions arrived at in the foregoing render it unnecessary to consider any other assignments of error by appellant or appellees. It would be immaterial what kind of paper title appellees may have had; if the facts are as stated, the title acquired by Mrs. Pease, the appellant, by limitation would be the better title to the 96 acres of the land claimed by her.

The judgment of the court below is reversed, and judgment here rendered for defendant below for the 96 acres of land claimed by her, in conformity with this opinion. In other respects the judgment is affirmed.

*Reversed and rendered.*

Delivered March 28, 1894.

Associate Justice KEY did not sit in this case.