### KENNARD v. MAXWELL. (No. 8856.)

(Court of Civil Appeals of Texas. Galveston. June 11, 1926. Rehearing Denied Oct. 7, 1926.)

**1. Boundaries ☞37(1).**

Evidence *held* to show that boundary, as claimed by plaintiff, was boundary called for by deed under which she claimed.

**2. Adverse possession ☞114(1).**

Evidence *held* to show that plaintiff had acquired title to disputed land by adverse possession, under ten-year statute.

**3. Boundaries ☞3(3).**

Where course and distance conflict with natural or artificial objects called for in survey, former must yield, if latter are found and identified.

**4. Boundaries ☞7.**

Where location of beginning corner of survey is doubtful, lines may be determined by starting with any other corner marked by natural or artificial object called for, which has been found and identified.

**5. Boundaries ☞37(5)—Evidence held insufficient to show that north boundary of plaintiff's land was established by agreement at point south of claimed boundary.**

Evidence *held* insufficient to show that north boundary of plaintiff's land was established at point 75 varas south of claimed boundary by alleged agreement between plaintiff's husband and defendant's grantor, defendant having no greater right in dividing line than such grantor had.

**6. Boundaries ☞46(1).**

Parol agreement establishing boundary, to be binding, must be followed by acquiescence and possession, and location of true boundary must be unknown and disputed.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Suit by Sadie F. Kennard against Will Maxwell, with cross-action by defendant. Judgment against plaintiff and for defendant on his cross-action, and plaintiff appeals. Reversed and rendered.

Boyles, Brown & Scott and Pat N. Fahey, all of Houston, for appellant.

John B. Warren, of Houston, for appellee.

LANE, J. This suit was brought by Sadie F. Kennard in the year 1925, prior to the 20th day of April of said year, against Will Maxwell to recover possession of about 12 acres of land forcibly taken from her by Maxwell, for damages, and for a mandatory injunction requiring Maxwell to remove a certain fence from said land which he had placed thereon.

The plaintiff alleged that she was on the 3d day of December, 1924, as she had been since January, 1898, the owner of a certain 100 acres of land, a part of the Andrew McStee one-third league, described by metes and bounds as follows:

"Beginning at a stake on south boundary line of the said one-third league, 1,042 varas from S. E. corner of said one-third league; thence N. 1 degree W. 592 varas to a stake in prairie; thence S. 89 degrees W. 954 varas to a stake on north bank of a gully from which a red oak 10 in. in diameter standing in south end of a grove marked on east and west sides with 3 hacks, bears N. 89 degrees E. 129 varas distant; thence S. 1 degree E. to a stake on south line of said McStee one-third league stake near Stifflemier's north fence; thence 954 varas to the place of beginning."

That she was in possession of said land, having same under fence, occupying and using the same, and holding the same continuously, adversely to the world from the 20th day of January, 1898, to the 31st day of December, 1917, at which time she conveyed the same to one J. P. Bailey, who took immediate possession thereof and remained in possession of the same until he reconveyed it to her in consideration of the cancellation of 13 promissory notes, executed and delivered to her by Bailey for the purchase money of said land; the first eight of said notes being for $100 each and the other five for $200 each; that after such reconveyance Bailey remained in possession of said land as her tenant until on or about the 5th day of December, 1924, at which time Will Maxwell forcibly and without right or authority of law entered upon said land, tore down her fence on the north line thereof, ejected her from 12 acres of her land, and erected a fence across her land at a point about 219 feet south of her north line; that the land as taken by Maxwell is described as follows:

"Beginning at the N. E. corner of said hereinabove described land; thence south along the east line of said land 211 feet to a point; thence west 2,441 feet to a point on the west line of the hereinabove described property; thence north 219 feet to the N. W. corner of the hereinabove described property; thence E. along the N. line of the hereinabove described property to the point of beginning."

That she is entitled to the possession of said land so taken, but that Maxwell refuses to permit her to take possession thereof.

Plaintiff alleged the rental value of said 12 acres of land for the year 1925, the year same was held by Maxwell, was $100, and that she was damaged in the sum of $100 by

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

(287 S.W.)

reason of the destruction of her fence. She prayed for an injunction requiring Maxwell to remove the fence erected by him and to reconstruct her fence at the point where it was when he removed it and for general relief.

Defendant Maxwell answered and alleged that one Henry Suggett purchased from Ed Ambron and T. S. Reese by deed of date September 27, 1888, a tract of 200 acres of land, a part of the Andrew McStee one-third league, said 200 acres being described in said deed of Ambron and Reese as beginning at a stake in the prairie in the south line of the McStee survey 1,850 varas from its S. W. corner; thence north 1,184 varas to a stake in the prairie; thence west 954 varas to a stake on the east line of Nass 400-acre tract; thence south with Nass east line 1,184 varas to stake in south line of said McStee survey; thence east 954 varas to beginning. That on the first day of January, 1923, he purchased from the Suggetts the north 100 acres of the Suggetts' 200-acre tract, and that plaintiff's land and defendant's land had a common dividing line, the same being 592 varas north from and running parallel with the south line of the McStee survey. He denied that any part of the 12 acres of land sued for was embraced within the metes and bounds as set out in the deed from Suggetts to N. E. Kennard, and averred that said 12 acres was all on the north 100 acres of the Suggett 200-acre tract.

Defendant further alleged that on the 2d day of May, 1908, he purchased from one Joseph Dilger 250 acres of land, a part of the McStee survey lying just north of the 200-acre Suggett tract; that at the time of such purchase it was discovered that, in fencing the Suggett tract, the fence had been placed approximately 75 varas too far north so that it was to that extent on the land he had purchased from Dilger; that at such time, at a meeting between defendant, Mrs. Martha Suggett (widow of Henry Suggett, deceased), and her daughter (the only child of the Suggetts), and her husband, and N. E. Kennard (the deceased husband of the plaintiff), it was agreed by and between such parties that the north line of the fence of Kennard had been placed 75 varas too far north and to that extent had inclosed the land belonging to the Suggetts, and that it was agreed by all parties at such meeting that:

"The said Mrs. Suggett and her daughter would remove their fence and place it upon the true north line of their one hundred (100) acres of the said Henry Suggett tract of two hundred (200) acres, and, that thereafter, the said line should be recognized as the dividing line between the defendant's land on the north and the land of the said Mrs. Suggett on the south, amounting to one hundred (100) acres, same being the north one hundred (100) acres of the Henry Suggett tract, and it was further agreed by the parties thereto that the husband of the plaintiff would move his fence approximately seventy-

five (75) varas south of its position at that time, and, that thereafter, the said line as agreed to * * * should be the true dividing line between the said Mrs. Martha Suggett and her daughter, Mrs. Danford, and the husband of the plaintiff, who owned the south one hundred (100) acres of said Suggett two hundred (200) acre tract."

Asking affirmative relief, defendant alleged that he was the owner of all that portion of the Suggett 200-acre tract lying north of the dividing line between the north and south 100 acres thereof, as he contends it is situated; alleged that the plaintiff had forcibly and unlawfully taken possession thereof; and prayed judgment for title and possession of the same.

In reply to defendant's answer and cross-action, plaintiff denied that the boundary line between that portion of the 200-acre Suggett tract conveyed to Kennard by the Suggetts and that portion thereof retained by the Suggetts was ever agreed to by N. E. Kennard or plaintiff as being located elsewhere than where the deed from the Suggetts to Kennard placed it, and where the north line of Kennard's fence stood at the time of said alleged agreement and at the time the defendant tore it down. She further alleged that if there was such agreement as to said boundary line, as alleged by defendant, nothing was ever done by any party to such agreement to put the same into effect; that neither party to such alleged agreement by reason thereof gave or took possession of any land not theretofore possessed by them, but, to the contrary, it has at all times been the understanding of the Suggetts and the Kennards that the fence torn down and removed by defendant marked and was the true boundary line between the land conveyed to Kennard and that retained by the Suggetts; that such understanding was acquiesced in by said parties from the year 1898 to the year 1923, and at no time did said parties have any dispute as to the true location of said dividing line.

She also disclaimed as to all the land sued for by defendant in his cross-action except the 12 acres described in her petition, and, as to this 12 acres, in addition to her averments of ownership by reason of the deed from the Suggetts to Kennard, she alleged title thereto under the five and ten year statutes of limitation.

The cause was tried by the court without a jury, and judgment was rendered denying recovery to the plaintiff and decreeing recovery to defendant on his cross-action for the land sued for. Plaintiff has appealed.

[1, 2] Appellant contends that the court erred in rendering judgment in that the undisputed evidence shows that the 12 acres of land sued for by her was embraced within the metes and bounds set out in the deed from the Suggetts to N. E. Kennard of date 20th day of January, 1898, and that by said deed title to the same passed to Kennard; that the undisputed evidence shows that she

had, independent of said deed, acquired title to said land under the ten-year statute of limitation pleaded by her; and that there was no evidence to show that the dividing line contended for by appellee was ever agreed to, or, if agreed to, that it was ever carried into execution by any act of the parties thereto; but, to the contrary, the undisputed evidence shows that such parties did not carry the same into execution, but that they, at all times thereafter, acquiesced in maintaining the dividing line where it was understood to be prior to such alleged agreement. All of the findings of fact of the court tending to support the judgment rendered were attacked by appellant.

We think the contention of appellant, as above stated, should be wholly sustained. The undisputed evidence shows that on the 27th day of September, 1888, Ed Ambron and T. S. Reese conveyed to one Henry Suggett, the deceased husband of Mrs. M. E. Suggett, a certain 200 acres of land described in such conveyance as follows:

"A part of the Andrew McStee one-third (⅓) league beginning at a stake in prairie in the south line of said survey 1,850 vrs. from the S. W. corner thereof; thence north 1,184 vrs. to stake in prairie; thence west 954 vrs. to a stake on east line of Nass four hundred (400) acres; thence south with Nass east line 1,184 vrs. to a stake in south line of said McStee survey; thence east 954 vrs. to the beginning, containing two hundred (200) acres of land."

That shortly after the purchase of said land by the Suggetts it was put under fence by them; that the south line of such fence was 75 or 80 varas north of the line contended for by appellee Maxwell as being the south line of the McStee one-third league; that said fence extended north along the east line of said land 1,184 varas, and from that point west 954 varas to the east line of a certain 400-acre tract of land known as the Nass tract; that this north line of fence was 75 or more varas north of the line contended for by Maxwell as the north line of the Suggett 200-acre tract; that N. E. Kennard, the deceased husband of Mrs. Sadie F. Kennard, the plaintiff in this suit, did, on the 20th day of January, 1898, purchase and have conveyed to him by Henry Suggett and wife, M. E. Suggett, a certain tract of land a part of said 200-acre tract, described in such conveyance as follows:

"Situated on the Andrew McStee one-third (⅓) league in Waller and Harris counties about eight (8) miles north 70 east from Hempstead, Texas, and more particularly described as follows: Beginning at a stake on south boundary line of said one-third (⅓) league 1,043 vrs. from the S. E. corner of said one-third (⅓) league; thence north 1 deg. W. 592 vrs. to a stake in prairie; thence south 89 deg. W. 954 vrs. to a stake on north bank of a gully from which a red oak 10 in. in dia. standing in south end of a grove marked on east and west sides with three hacks bears north 89 deg. E. 129 vrs. distance; thence south 1 deg. E. to a stake on south line of the said McStee one-third (⅓) league, stake near Stifflemier's north fence; thence 954 vrs. to the place of beginning."

It is shown, as already stated, that soon after the Suggetts purchased their 200 acres in 1888 they placed a fence at what they thought was their north line; that it remained in such place from the time it was constructed up to the time it was torn down in the year 1908 by appellee Maxwell. It is shown by the recitals in the deed by which the Suggetts conveyed what they supposed was the south 100 acres of their 200-acre tract to Kennard, that, at the time said conveyance was made, a stake was placed in the east line of said 200-acre tract on the north bank of a gully as the N. W. corner of said 100-acre tract. It is shown that there was but one gully on said tract and that on the north bank of this gully was a stake, found by all the surveyors who surveyed said tract in 1908 and later to be 592 varas south from the fence placed on their north line by the Suggetts about the year 1888. Surveyor Gillespie testified that he found the "T" rail, placed in the west boundary line of the 200-acre tract by Maxwell as the N. W. corner thereof, which was shown to be 75 varas south of the north fence of the Suggetts, that he measured the distance from said "T" rail to the stake set on the north side of the gully and found it to be 516 varas, thus showing that such stake was practically, if not exactly, 592 varas south from the north fence of the Suggetts', as it stood at the time the Suggetts surveyed and conveyed to Kennard the tract of land described in the Kennard deed. The facts last stated, however, are material only as tending to show, independent of the recitals in the deed, that the Suggetts intended to establish the line dividing the 200-acre tract into two parts 592 varas south from the Suggetts' north fence, as it was originally constructed.

We think, however, that we need look no further than the recitals in the deed from the Suggetts to Kennard and the undisputed evidence showing that a line beginning on the south line of the McStee one-third league, if extended along the east line of the Suggett 200 acres to a stake in said east line from which a line running south 89 degrees west 954 varas, as called for in the Kennard deed, would reach a stake on the north bank of a gully as called for in the Kennard deed; that in 1908 two surveys were made of the Kennard 100 acres, one by county surveyor Moore, and the other by surveyor Ashford, in the presence of appellee Maxwell; and that both of said surveyors found a stake on the north bank of a gully (the only gully on the land) called for in Kennard's deed as the N. W. corner of his tract; that surveyor Gillespie surveyed the same land in 1923 or 1924,

and in running north along the east line of the Suggett tract he found a stake on said east line, from which a line run south 89 degrees west 954 varas, as called for in Kennard's deed, would end at a stake on the north side of a gully, as called for in Kennard's deed as his N. W. corner; that, at the time the Suggetts conveyed the land to Kennard in 1898, there was a fence standing practically on the line running east from the stake on the gully to the stake on the east line of the Suggett tract, heretofore mentioned; that Kennard was placed in possession of that portion of the Suggett tract lying south of said fence at the time of his purchase in 1898, and that such land was the land conveyed by the Kennard deed was never questioned by the Suggetts nor their heirs.

From the facts stated, we think it is made clear that the north boundary line of appellant's land, as claimed by her, is the boundary called for by the deed of the Suggetts to N. E. Kennard and is the line pointed out by the Suggetts to Kennard as such boundary, when he was placed in possession thereof in 1898.

[3] It is well settled in this state that where course and distance are in conflict with natural or artificial objects called for in a survey, the former must yield and the lines of the land be fixed by the latter, if found and identified as those called for in the conveyance. Davis v. Smith, 61 Tex. at page 18.

[4] The beginning corner of a survey is of no higher dignity or importance than any other corner; and, where a natural or artificial object called for is found and identified at any corner, the lines of the survey may be determined by commencing at that point instead of the beginning corner. And where the location of a beginning corner is in doubt, any other corner marked by a natural or artificial object called for in the survey, found and identified as such, should be used in determining the boundaries of such survey. Phillips v. Ayres, 45 Tex. 601; Davis v. Smith, supra; Koenigheim v. Miles, 67 Tex. 113, 2 S. W. 81; Meade v. Jones, 13 Tex. Civ. App. 320, 35 S. W. 310; Taft v. Ward, 58 Tex. Civ. App. 259, 124 S. W. 437; Duren v. Presberry, 25 Tex. 512, at page 517.

In Koenigheim v. Miles, an opinion by Judge Gaines, late of our Supreme Court, said:

"Having bought a well-defined tract marked upon the ground, he acquired such title as his grantor had in this and no right to any other land. * * * The rule is general that the boundaries of a grant, as actually surveyed, are the limits of the grantee's right, and will control calls for the unascertained boundaries of existing surveys. These appellants cannot shift the locality of their grant from the ground upon which it was originally laid out and designated to another place, merely because it is shown that its corner is not the true corner of the original survey called for."

In Taft v. Ward it is said:

"If footsteps of the surveyor are found and identified, they must control, and all classes of calls must yield to them."

In Duren v. Presberry, Chief Justice Wheeler said:

"We know of no rule for the construction of grants which would give a controlling influence to a call for the corner of a survey over a call for bearing trees and marked lines, which are found upon the ground to correspond with the calls. The corner of a survey, though a good call, and one which may control mere course and distance, is not necessarily a more certain and material or notorious object than a marked line or marked trees called for in a grant, and will not necessarily control calls for those objects. * * *

"The correspondence of the bearing trees with the calls in the grant and the marked line running to the second corner of the survey render it reasonably certain, we think, that the point where these objects are found is the true beginning corner of the survey, and that the call for the southwest corner of the Brooks Williams League is a mistake. We are of opinion, therefore, that the court erred in holding that to be the beginning corner and giving judgment accordingly for the plaintiff. The judgment, we think, should have been for the intervenor, and it will be reversed and rendered accordingly."

The deed of the Suggetts to Kennard calls for a stake on the north bank of a gully, in the west boundary line of the Suggett 200-acre tract, as the N. W. corner of the land conveyed to Kennard by said deed. A stake meeting the description of the stake called for in the deed in every respect was found upon the ground by surveyors Moore and Ashford in 1908, and by surveyor Gillespie in 1925, when he surveyed the land for appellee Maxwell. The recitals in the Kennard deed, together with the undisputed facts and circumstances, show clearly that the land sued for by appellant is embraced within the boundaries given in the deed and is the land pointed out by the Suggetts to Kennard as being that conveyed by said deed. It was, we think, also established by undisputed testimony that the fence torn down by appellee Maxwell, contended for by appellant as being practically on the line dividing her land from Suggetts' land, had been acquiesced in as such dividing line, from the time Kennard took possession of his land in 1898 to the time of the trial of this cause, between the Kennards and the Suggetts, who had owned the respective tracts.

Since we have held that the recitals in the Kennard deed, when taken in connection with the undisputed facts, show that the land sued for was embraced within the boundaries given in said deed, it would seem unnecessary to discuss appellant's contention that she had title to the land sued for under proof of the ten-year statute of limitation pleaded by her, except for the fact that, if such title

is established, it gives appellant title as against appellee's claim of an agreed boundary, independent of her deed. We have, however, after a very careful consideration of the entire statement of facts, reached the conclusion that the undisputed facts show that at all times since the alleged agreement as to boundary was entered into in 1908 (if at all), appellant has had the land sued for inclosed with a fence and has in person and by tenants held and claimed the same, occupying and using the same, in such manner and for such time as to ripen her title thereto under the ten-year statute of limitation.

[5] We are now brought to a consideration of the contention of appellee that appellant's claim that her north boundary line is that drawn from the stake on the north bank of the gully to the stake in the east boundary of the Suggett 200-acre tract, where her fence was placed in 1898 and there maintained until it was removed by appellee in 1924, cannot be upheld, in that in 1908, N. E. Kennard, her husband, had entered into an agreement with Mrs. Suggett and her daughter, the sole heir of Henry Suggett, fixing the north boundary of the Kennard 100-acre tract at a place 75 varas south of the boundary now claimed by her.

It is shown that in May, 1908, one Joseph Dilger conveyed to appellee Maxwell 250 acres of land, a part of the McStee one-third league, lying contiguous to and just north of the Suggett 200-acre tract; that at the time of such purchase there was a fence on what the Suggetts claimed as their north line; that such fence had been maintained by the Suggetts since 1888; that after Maxwell purchased the 250 acres he claimed that, taking the Suggett fence as the north line of the Suggett tract, there would be a surplus of 12⁷⁄₁₀ acres of land in the Suggett tract, that Suggett had made a mistake in putting his fence where it then stood, and that Suggett's true north line was 75 varas south of said fence, and, making such contention, he arbitrarily moved Suggett's fence 75 varas south; that such action on the part of Maxwell brought on a controversy between Mrs. Suggett, the widow of Henry Suggett, who was then dead, and the only child of Henry Suggett, on the one side, and appellee Maxwell on the other, as to the location of the true dividing line between them. At such time, to wit, 1908, there was a meeting at which Mrs. Suggett and her daughter, Mrs. Danford, Mr. Danford, husband of the daughter, N. E. Kennard, husband of the plaintiff, now deceased, and appellee Maxwell were present. Maxwell testified that at such meeting Mrs. Suggett agreed that the county surveyor might locate the north line of the Henry Suggett 200-acre tract; that Mrs. Suggett and Mrs. Danford agreed to move their fence south 75 varas; that Mrs. Suggett and Danford and wife agreed:

"That the fence between the 100 acres might be surveyed by the county surveyor, and the fence on the Kennard 100 acres might be placed on the dividing line as found by the county surveyor."

He testified further, in substance, that the surveyor found the line between Kennard and the Suggetts to be where he claims it is. (Note. It will be observed that he does not testify that either Kennard or his wife were parties to such agreement.)

Mr. Danford, testifying as to the alleged agreement, said: .

"Mrs. Suggett agreed to remove the fence on the north line of her land and place it on the true dividing line between her land and the Dilger tract then owned by Maxwell, but it was to be done without expense to her. It was agreed at such meeting by Kennard that he would remove his fence between his land and that of Mrs. Suggett and place it on the true dividing line between their respective tracts of 100 acres each."

He testified that he did not remember that the parties agreed to have the county surveyor survey the Kennard 100 acres and locate the lines between said 100 acres and the land of the Suggetts.

Mrs. Danford testified as to the agreement substantially as did her husband, except she states that such agreement was conditioned that it would be carried out provided all parties complied therewith and moved their fences. She further testified that the next day after the tentative agreement was entered into they (the Suggetts) received word that Kennard rescinded his agreement; that she knew nothing of an agreement to have the county surveyor to survey the land and fix the boundary between their land and that of Kennard.

Mrs. M. E. Suggett testified on direct examination as follows:

"My name is Mrs. M. E. Suggett, age 64 years. I have no occupation and live on R. F. D. No. 2, Waller, Tex. I am the same person who with J. H. Suggett, on the 20th day of January, 1896, by deed of that date, conveyed to N. E. Kennard about 100 acres of land, a part of a 200-acre tract owned by me out of Andrew McStee one-half league in Waller and Harris counties, about eight miles east of Hempstead, Tex. I was living at that time where I am living now, R. F. D. No. 2, Waller, Tex. I am still living there. The tract of land owned by me and J. H. Suggett and sold to N. E. Kennard did not join the land on which we were then living. In 1908 I was living where I am now. I recall some time in the year 1908 Will Maxwell claimed a part of the north side of my land. I sold him the land after Mr. W. Maxwell tore my fence down. There was no agreement made between me and Will Maxwell about our north line; that is, between my tract of land and the Dilger tract which had been bought by Maxwell. There was no agreement. I did not make any agreement with N. E. Kennard with regard to the division line between my land and his; that is, between the land myself

and J. H. Suggett sold him in the year 1898, and the land I kept. The county surveyor surveyed Mr. N. E. Kennard's 100 acres, and I had my portion left. In 1908 there was nothing done about his and my division line. There was no agreement between Kennard and I about our division line. N. E. Kennard had the land J. H. Suggett and I sold him under fence. He kept it under fence till the year 1924, that was the last time I saw the fence. His fence was on the line between the land I sold him and the land I kept. I know where the division fence was from the year 1898 to 1908 and it remained at the same place during all that time. It was not moved by any one during the year 1908. During 1908, or afterwards, I never discussed the matter of moving the division fence with Mrs. Sadie F. Kennard, wife of N. E. Kennard. There was nothing said to me concerning that matter by Mrs. Kennard. The division fence between the land I sold N. E. Kennard and the land kept by me remained in the place it was in 1908 all the time. Before Will Maxwell bought the Dilger tract of 250 acres, in the year 1908, there was no dispute or disagreement between N. E. Kennard and me concerning the division line between my place and the place I sold him."

On cross-examination she said:

"It is true that in 1908 the defendant, Will Maxwell, and the husband of the plaintiff, N. E. Kennard, took dinner at my house, and the purpose of the matter was to discuss the location of the fences between my land and Will Maxwell, and the location of the fence between my land and the said N. E. Kennard.

"With reference to whether or not if it is true that I agreed with Mrs. Kennard and Mr. Maxwell that I would remove my fence between me and Maxwell, and that Kennard would move his fence south between my land and his and put such fence on the true line between me and Kennard, my answer is, 'We talked and agreed; but Mrs. S. E. Kennard came over, and said her husband, N. E. Kennard, said it was all over; none of the others was going to move.'

"With reference to the fact that it is not also true that there was a general and free discussion of the location of these fences and lines at said meeting, and it was agreed between all of us that the fence between me and Maxwell was too far north and inclosed a part of the land I was living on, my answer is, 'It was agreed, if all others moved back.' I was not living on the land then. There was no meeting. Mr. W. Maxwell and Mr. N. E. Kennard ate dinner with me and talked it over. It is not true that Mr. Kennard and myself agreed to get the county surveyor to locate the line between me and Mr. Kennard and wherever such surveyor located said line, same should be the line between me and Mr. Kennard and wherever such surveyor located said line, same should be the line between me and Mr. Kennard and that should be the line on which Mr. Kennard would place the common fence dividing our respective 100-acre tracts of land."

Shortly after the tentative agreement was had Mrs. Suggett and Mr. and Mrs. Danford, for a consideration of $6 per acre, conveyed to appellee Maxwell the 12⁷⁄₁₀ acres of land

287 S.W.—5

which he had taken into his inclosure by moving the fence of Mrs. Suggett 75 varas south.

Mrs. Suggett, Mrs. Danford, Mr. Danford, and the plaintiff all testified that Kennard was placed in possession of the land south of the fence or fences dividing his land from theirs when he bought it in 1898; that all of them acquiesced in such line as the true dividing line between their respective tracts from such date; and that they never, at any time, had any dispute as to the location of such line. The testimony of these witnesses is undisputed by any witness or circumstance.

It is shown by the undisputed evidence that neither the Suggetts nor the Kennards ever made any attempt to carry the tentative agreement into execution after it was made, but, to the contrary, it was repudiated the day after it was made by Kennard, and the parties were informed that he would not carry it out. It is shown by the undisputed evidence that no change was made in said division line at any time until Maxwell, in 1923, without consulting the plaintiff, tore down her north line fence and built a fence across plaintiff's land from east to west 75 varas south of the north line, as fixed by the deed from the Suggetts to Kennard and by the acquiescence of the Suggetts and Kennards.

It was shown that, at the time of the alleged agreement, appellee Maxwell had no interest in the location of such dividing line and that he acquired no interest therein until 1923, at which time he purchased that portion of the Suggett 200 acres not theretofore conveyed to and claimed by the plaintiff. At the time of the alleged agreement, there was no dispute as to the location of any division line between Maxwell and the Kennards, as there was no dividing line between any land he then owned and the Kennards; so if he now has any right in the dividing line asserted by him, as established by the agreement between the Suggetts and Kennards, it is only such rights as the Suggetts had; and, since it is shown by the undisputed evidence that there was at no time a dispute between the Suggetts and Kennards as to the location of the division line in question, the alleged agreement did not have the effect to establish the same by agreement of the owners whose lands it divided.

It is also shown by the undisputed evidence that the alleged parol agreement was never followed by acquiescence and possession on the part of the agreeing parties. The line, as fixed by the deed of the Suggetts to Kennard and as acquiesced in by the Suggetts and Kennards for about ten years prior to said agreement, was never actually changed after the alleged agreement was entered into, but, to the contrary, it is shown that each of the parties continued in possession of the land on their respective sides of said fixed and acquiesced-in line at all times prior to the pur-

chase of the Suggetts' land in 1923 by Maxwell..

[6] In 9 Corpus Juris. 234, it is said:

"According to some decisions there must not only be doubt and uncertainty in respect of a true division line, but there must also be an actual dispute or controversy between the parties. In other decisions in which this question has been directly presented and passed on, the contrary view is maintained. * * * It is very generally held, either expressly or by clear implication, that a parol agreement establishing a boundary in order to be binding must be followed by acquiescence and possession."

In Voight v. Hunt (Tex. Civ. App.) 167 S. W. 745, it is held that it is essential to the validity of an oral agreement to fix a boundary line that such line be in dispute, and that its true location be unknown to the parties making the agreement. Otherwise, the fixing of such boundary by oral agreement would be passing title to real estate contrary to the statute of frauds. To the same effect are the holdings in Ware v. Perkins (Tex. Civ. App.) 178 S. W. 846, Cook's Cattle Co. v. Barnhart (Tex. Civ. App.) 147 S. W. 662, Bridges v. Johnson & Muldrew, 69 Tex. 714, 7 S. W. 506, and Cummings v. Williams et al. (Tex. Civ. App.) 269 S. W. 845.

We have reached the conclusion that the facts shown do not support the contention of appellee that the north boundary line of the Kennard 100 acres was established by the agreement alleged by him.

Having reached the conclusion above expressed, it becomes our duty to reverse the judgment of the trial court, and to here render judgment for appellant for title to and possession of the land sued for by her, and it is so ordered.

Reversed and rendered.