# IN THE SUPREME COURT OF TEXAS

══════════════
No. 14-1038
══════════════

LISA KRAMER, F/K/A LISA KASTLEMAN, PETITIONER,

v.

BRYAN KASTLEMAN, RESPONDENT

═══════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS
═══════════════════════════════════════════════

**Argued September 13, 2016**

JUSTICE GUZMAN delivered the opinion of the Court.

The acceptance-of-benefits doctrine precludes a litigant from challenging a judgment after voluntarily accepting the judgment's benefits: "A litigant cannot treat a judgment as both right and wrong."[1] Applying this estoppel-based equitable doctrine,[2] the court of appeals dismissed the petitioner's appeal challenging the property-division and child-welfare provisions of a final divorce decree.[3]

---

[1] *Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950).

[2] *Id.*

[3] 2014 WL 3809759, at *4, ___ S.W.3d ___ (Tex. App.—Austin 2014).

We last examined the acceptance-of-benefits doctrine more than sixty-five years ago in *Carle v. Carle*, which is the only time we have applied the doctrine in a marital-dissolution case.[4] We granted review in this case because, in the intervening years, the doctrine has been applied irregularly and has become unmoored from its equitable underpinnings. Though "exceptions" have arisen to ameliorate harshness that would otherwise result from rigid application of the doctrine, the jurisprudence trends away from the doctrine's root principles. The trajectory toward a rigid and formulaic application of the doctrine is acutely problematic in marriage-dissolution cases because divorce decrees routinely divide assets in which a party's right to possession and control preceded the final decree.

This case presents the opportunity to clarify that the acceptance-of-benefits doctrine is a fact-dependent, estoppel-based doctrine focused on preventing unfair prejudice to the opposing party. Under this doctrine, a merits-based disposition may not be denied absent acquiescence in the judgment to the opposing party's irremediable disadvantage. Though matters of equity are seldom amenable to unyielding principles and inflexible rules, several factors inform the equitable inquiry. Because those factors do not favor an estoppel in this case, we reverse the court of appeals' judgment and remand the cause to that court for further proceedings.

## I. Background

The nine-year marital union of Lisa Kramer and Bryan Kastleman produced one child and a $30 million marital estate. Two years into the parties' acrimonious and expensive marriage-

---

[4] *Carle*, 234 S.W.2d at 1004-05.

dissolution proceedings, they executed two agreements settling all issues. One agreement concerned their child, and the other divided the marital estate.[5] The day after the final agreement was executed, the trial court held a brief evidentiary hearing on the divorce petitions. At the hearing, Kastleman testified the conservatorship agreement was in the child's best interest and the property division was a fair and equitable division of the marital estate.[6] The trial court orally approved the settlement agreements and granted the divorce petitions.

More than a year passed before the trial court's rulings were reduced to writing in a final divorce decree. Before that happened, however, Kramer revoked her consent and moved to set aside the parties' property agreement, arguing it was fraudulently and coercively procured. Among other accusations, Kramer alleged Kastleman had forged her signature on financial and real-estate documents and concealed significant assets, vitiating her consent and creating an inequitable division of the marital estate.

Kastleman responded with a motion to enter judgment and a motion for sanctions and attorney fees, asserting Kramer's claims were false, preexisted the settlement agreement, and were based on information disclosed to her in the pre-settlement discovery process. Kastleman also

---

[5] The parties dispute whether the agreement dividing the marital estate is a mediated settlement agreement, an informal settlement agreement, or an agreement incident to divorce. They also dispute whether or not the agreement concerning their child is a mediated settlement agreement. The distinctions bear legal significance with regard to enforcement and the ability to withdraw consent or appeal a conforming judgment, but those issues are not presented for our disposition and are immaterial to the issue presented. *See* TEX. FAM. CODE §§ 6.602 (enforcement of mediated settlement agreement in suit for dissolution of marriage), 6.064 (enforcement of informal written settlement agreement in dissolution suit), 7.006 (written agreement concerning division of property, liabilities, and maintenance on dissolution of marriage), 153.0071 (enforcement of mediated settlement agreement involving conservatorship, possession, and access).

[6] Because the settlement agreement did not assign values to the allocated property and no evidence of value was produced at the prove-up hearing, we cannot discern whether the division of property was intended to be relatively equal.

complained that Kramer had been dilatory in challenging the settlement agreement, waiting nearly a year to challenge the agreement. Kastleman claimed that, following the court's oral approval of the agreement, (1) he sold property awarded to him, and (2) Kramer collected rental income of more than $20,000 per month from interests allocated to her in the property settlement agreement, refinanced loans secured by those income-producing properties (to remove his name from the loans as required by the settlement agreement), and took cash as part of the refinancing.

After an evidentiary hearing, the trial court sanctioned Kramer for filing a frivolous, bad-faith, and harassing motion. The court awarded Kastleman more than $32,000 in attorney fees plus conditional appellate attorney fees.[7] Shortly thereafter, the court rendered a final divorce decree.

Kramer filed several post-judgment motions challenging the decree and sanctions order. In addition to her previously asserted grievances, Kramer complained that the child-support and child-custody provisions in the final decree materially deviated from the parties' agreement. The trial court corrected the divorce decree in certain respects and modified the conditional appellate attorney fees awarded in the sanctions order, but substantially denied Kramer the relief she sought. The corrected final decree incorporates by reference the parties' settlement agreement. Kramer's second motion for new trial was denied.

On appeal, Kramer argued that (1) the settlement agreement was invalid and the trial court erred in enforcing it, (2) the terms of the decree pertaining to the parties' child did not conform to the settlement agreement, (3) the sanctions award was improper, and (4) the trial court erred in

_____

[7] The trial court also awarded $2,250 in sanctions to an intervenor, but Kramer did not appeal that sanctions order.

4

awarding additional attorney fees to Kastleman in the order denying her new-trial motion. Shortly before filing a responsive brief, Kastleman moved to dismiss Kramer's appeal under the acceptance-of-benefits doctrine. Kastleman argued Kramer is estopped from challenging the corrected final divorce decree because (1) she had been collecting at least $20,000 per month in rental income from property awarded to her in the decree, and (2) immediately after filing a motion to set aside the settlement agreement, she attempted to "enforce" it during a hearing by requesting an opportunity to retrieve personal property allocated to her (dishes, china, and a dining room table and chairs) from a condominium allocated to Kastleman, which had been vacated in connection with its impending sale.[8] Kastleman argued Kramer was under no financial duress when she accepted these benefits because she had access to bank and brokerage accounts with substantial balances.

The court of appeals granted Kastleman's motion and dismissed the entire appeal without reaching the merits.[9] The court held Kramer was barred from pursuing her appeal because she accepted the divorce decree's benefits. The court found no evidence Kramer had actually taken possession of personal property under the decree, but it was undisputed that she accepted at least $20,000 per month in rental proceeds.[10] The court also noted that Kramer had refinanced the rental property.[11] Though the divorce decree required Kramer to refinance those properties under threat

---

[8] Neither the motion to dismiss nor Kramer's response is included in the record. The parties do not contest the court of appeals' statement of the issues, but Kramer contends the court of appeals raised additional issues *sua sponte*.

[9] 2014 WL 3809759, at *4, ___ S.W.3d ___ (Tex. App.—Austin 2014).

[10] *Id.* at *3-4.

[11] *Id.* at *3.

of forced sale, the court equated her compliance with "seek[ing] and obtain[ing] legal title to real property awarded in the judgment" and held that "[a] party accepts the benefits of a judgment when she seeks and obtains legal title to real property awarded in the judgment."[12]  The court further cited as binding a trial-court finding that Kramer had accepted more than $1 million in assets and funds since executing the settlement agreement.[13]

In dismissing the appeal, the court said Kramer failed to establish any exception to the doctrine's application.  The court held that a "cash benefits" exception to estoppel did not apply because Kramer, by accepting $20,000 per month in rental proceeds and refinancing the properties, necessarily accepted the real property from which the rental proceeds derived.[14]  The court rejected any claim of economic necessity as inadequately briefed by Kramer, lacking evidentiary support, and contrary to evidence "that she was awarded substantial assets in addition to the . . . rental property, which generated more than $20,000 per month in funds."[15]  Though Kramer did not argue a third exception that applies when the appealing party's right to the benefits accepted could not be affected by the judgment's reversal, the court said the exception did not apply absent a guarantee Kramer

---

[12] *Id.* at *3 n.5.

[13] *Id.* at *3.  In written findings of fact and conclusions of law, the trial court found that "since signing the Settlement Agreement, Lisa Kramer has accepted substantial assets and funds pursuant to the Settlement Agreement in excess of $1 million USD."  *See* TEX. FAM. CODE §§ 6.711 (on request in a marriage-dissolution suit in which the judgment divides the marital estate, the trial court must issue findings of fact and conclusions of law concerning characterization and value or amount of assets, liabilities, claims and offsets, if disputed evidence has been presented), 153.258 (requiring trial court to state "specific reasons" for a variance from the standard child-possession order when possession is contested and a party requests findings).

[14] *Id.* at *3-4.

[15] *Id.* at *4.

would be awarded the same property she had accepted if she prevailed in her quest for a redivision of the marital estate.[16]

The court did not address whether it was conceivable that a just and right division would actually result in Kramer being awarded assets valued at *less* than any benefits she had accepted; rather, the court found it dispositive that division of marital property may simply differ on remand. This, of course, is always the case when remand is required based on a material error affecting the trial court's just-and-right property division; a party could always get more, less, or different.[17] The court also did not consider whether Kastleman had been disadvantaged by Kramer's acts of dominion over marital property and afforded no weight to evidence Kramer could restore the benefits accepted in the event of remand for a just-and-right division.

In a supplemental opinion on rehearing, the court refused to partially reinstate the appeal as to the sanctions, attorney-fees, child-support, and child-custody issues, holding Kramer failed to address severability of those issues in response to Kastleman's motion to dismiss.[18]

On petition for review to this Court, Kramer contends dismissal of an appeal is not appropriate unless a spouse's acceptance of benefits under a divorce decree prejudiced the other spouse or the spouse has otherwise clearly acquiesced in the judgment. In the alternative, she argues

---

[16] *Id.* at *4 n.6.

[17] *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex. 1985) ("[A] court of appeals must remand the entire community estate for a new division when it finds reversible error which materially affects the trial court's 'just and right' division of the property.").

[18] 2014 WL 5420411, at *1, ___ S.W.3d ___ (Tex. App.—Austin 2014).

7

the court of appeals erred in dismissing her appeal in its entirety because the disputed child-welfare, sanctions, and attorney-fees issues are unaffected by acceptance of the property division.

We granted Kramer's petition to examine the acceptance-of-benefits doctrine and to clarify the role prejudice plays in the doctrine's application. Our disposition of that matter obviates the need to consider whether any issues were severable and whether Kramer bore the burden of asserting severability in response to the motion to dismiss.

## II. Discussion

### A. The Acceptance-of-Benefits Doctrine

Litigants cannot enjoy the fruits of a judgment while simultaneously challenging its validity.[19] This has been the law in Texas for more than 150 years.[20] The acceptance-of-benefits doctrine is "based on the principle of estoppel"[21] and precludes a party from "first adopting [a] judgment as right, and then repudiating it as wrong, [so as to take] advantage[] of its being both right and wrong."[22] Estoppel prevents litigants from taking contradictory positions as a means of gaining an unfair advantage from the inconsistency.[23] Courts, we have said, "should not be placed in the

---

[19] *Matlow v. Cox*, 25 Tex. 578, 580-81 (1860).

[20] *See id.*

[21] *Carle v. Carle*, 234 S.W.2d 1002, 1004 (Tex. 1950).

[22] *Matlow*, 25 Tex. at 580-81.

[23] *Cf. Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (discussing judicial estoppel).

attitude of subserving such a purpose; nor would it be fair dealing towards the opposite party to permit it."[24]

The acceptance-of-benefits doctrine is thus anchored in equity and bars an appeal if the appellant voluntarily accepts the judgment's benefits and the opposing party is thereby disadvantaged.[25] The burden of proving an estoppel rests on the party asserting it, and the failure to prove all essential elements is fatal.[26]

Conceptually, the doctrine infers an agreement to terminate the litigation because the judgment has been voluntarily paid and accepted, or implies a waiver, release of errors, or admission that the decree is valid. The doctrine's equitable objective of precluding an appeal when a litigant's actions are inconsistent with a claim of error furthers finality, preserves scarce judicial resources, and guards against gamesmanship.

---

[24] *Matlow*, 25 Tex. at 581.

[25] *Cf. Concord Oil Co. v. Alco Oil & Gas Corp.*, 387 S.W.2d 635, 639 (Tex. 1965) ("An essential element of estoppel is that the party relying on an estoppel must have acted on it to his prejudice."); *Gorman v. Gause*, 36 S.W.2d 279, 281 (Tex. Civ. App.—San Antonio 1931) ("In order to estop a person from claiming their just rights it is necessary that they do some act, or accept some benefits, that would place the opposite party to a disadvantage."), *aff'd*, 56 S.W.2d 855, 859 (Tex. Comm'n App. 1933, judgm't adopted) (affirming trial court's fact finding that widow's possession and control over rental property was not intended to be acceptance under decedent's will, where she had made full accounting of rents collected and rents were used entirely to benefit the property); *W. Side Oil Co. v. McDorman*, 244 S.W. 167, 177 (Tex. Civ. App.—Amarillo 1922, no writ) ("'[P]rejudice is a necessary element of estoppel . . . .'" (quoting 4 Fletcher, Cyc. Corp. p. 3378; 1 Mechem on Agency, § 349)).

[26] *See, e.g.*, *Richards v. Richards*, 371 S.W.3d 412, 414 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("The appellee bears the burden of proof to establish application of the acceptance of the benefits doctrine."); *Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Gonzalez v. Gonzalez*, 614 S.W.2d 203, 204 (Tex. Civ. App.—Eastland 1981, writ dism'd); *cf. Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex. 1968) (equitable estoppel in contract dispute); *cf. also Heckman v. Williamson Cty.*, 369 S.W.3d 137, 167 (Tex. 2012) ("Because the facts pleaded here are sufficient to establish that a continuing class likely used to exist, and because defendants now argue that intervening events have mooted the class's claims, the burden is on defendants to establish this—cursory, blanket statements to this effect will not be enough.").

More than sixty-five years ago, we applied the acceptance-of-benefits doctrine in a divorce case for the first and only time.[27] In *Carle v. Carle*, we concluded the husband could not prosecute an appeal challenging the divorce decree's property division because he accepted $7,700 that had been awarded to him; the amount of the undistributed community funds was "much less than that sum"; the benefit secured by him under the judgment on appeal would therefore "necessarily be affected" if the appeal prevailed and he were successful in a retrial; and the wife's right to a partition of the real property at issue on appeal "might well be prejudiced."[28] For these reasons, we held the husband's acceptance of benefits was not excused under a "narrow" exception that applies when "an appellant accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment" and the appeal "involves only his right to a further recovery."[29]

The exception discussed in *Carle* is consonant with the doctrine's prejudice concerns because accepting only those benefits the litigant was entitled to receive works no injustice to the opposing party if an appeal of the judgment is successfully prosecuted.[30] Nor could acquiescence in the final judgment's validity be inferred if the litigant's entitlement to the benefit is undisputed and unaffected by the appeal's outcome. In such circumstances, the benefit accepted is not actually at issue on appeal, cannot be affected by reversal because the opposing party does not deny the appellant's right

---

[27] *Carle*, 234 S.W.2d at 1002-05.

[28] *Id.* at 1004-05.

[29] *Id.* at 1004.

[30] *See Stubbs v. Stubbs*, 671 S.W.2d 70, 72 (Tex. App.—Dallas 1984) (estoppel requires prejudice and none arose in this case by acceptance of rents and part-ownership interest in apartment complex, which wife thereafter sold to husband, because no dispute that the complex was community property or that wife was entitled to at least the extent of ownership interest accepted), *aff'd*, 685 S.W.2d 643 (Tex. 1985).

10

to retain the benefit, and dissipation by the appealing party thus could not prejudice the opposing party.[31]

In this case, the court of appeals found the entitlement exception inapplicable because the entire marital estate would be subject to a new just-and-right division and, as a result, Kramer could not establish that "her right to the benefits accepted could not possibly be affected by reversal of the judgment."[32]  In a new just-and-right division of the property, the court observed, it is "entirely possible that in the re-division of property, the trial court could award to [Kastleman] the [income-producing rental] properties or [the more than $1,000,000 in] assets" the trial court found Kramer had accepted under the settlement agreement.[33]  Unlike the analysis in *Carle*, however, the court did not consider whether Kastleman would be disadvantaged to any degree if that circumstance were actually to occur following remand.  Kramer contends the court of appeals misapplied the acceptance-of-benefits doctrine and misconstrued *Carle* by failing to require Kastleman to establish prejudice as a predicate to denying a merits-based disposition of the appeal.

---

[31] *See Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000) ("[T]he Lopezes' initial acceptance of a lesser portion of the settlement is not inconsistent with their later assertion that they were entitled to more."); *see also Tex. State Bank v. Amaro*, 87 S.W.3d 538, 544 (Tex. 2002) (appeal was not inconsistent with appellant's acceptance of trust monies that were indisputably due to him; appeal involved distinct issue); *Hornblower, Weeks, Noyes & Trask, Inc. v. Reedy*, 587 S.W.2d 433, 435 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.); *Kidd v. Kidd*, 584 S.W.2d 552, 554 (Tex. Civ. App.—Austin 1979, no writ); *cf. Molina v. Moore*, 33 S.W.3d 323, 326-27 (Tex. App.—Amarillo 2000, no pet.) (acceptance of total compensatory award did not preclude appeal seeking a greater recovery because appellant did not seek remand for retrial, only rendition of judgment on a greater recovery; cross-appellant's appeal seeking remand for new trial and placing compensatory damages at issue did not constitute an estoppel on the appellant's part).

[32] 2014 WL 3809759, at *4 n.6, ___ S.W.3d ___ (Tex. App.—Austin 2014).

[33] *Id.*

11

We have not substantively elaborated on the acceptance-of-benefits doctrine in any context since *Carle*, but we have more recently described it as "a species of quasi-estoppel [that] precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken" and said it applies "when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."[34]

Though acceptance-of-benefits principles apply to all appeals, Kramer asserts failing to consider the existence of prejudice is especially problematic in divorce cases. She points to jurisprudence reflecting divergent views on how restrictively to apply *Carle*, which can lead to harsh and inequitable results in marital-dissolution cases. Some courts take a hard-line approach that turns on the fact of possession and control over community property while other courts employ a (self-described) "enlightened" approach that requires a fact-driven equitable inquiry into the existence of prejudice and acquiescence.[35] We agree with Kramer that the existence of prejudice plays a fundamental role in determining whether it would be unconscionable and inequitable to permit an appeal to move forward, particularly in divorce cases, which are materially different from typical civil disputes.[36]

---

[34] *Lopez*, 22 S.W.3d at 864.

[35] *Haggard v. Haggard*, 550 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1977, no writ) (examining cases that "go further than *Carle* requires" and are "unduly restrictive" in ignoring *Carle*'s concern with prejudice and noting the more "enlightened" view that "a spouse should not be estopped from appealing an award pursuant to a divorce unless the other spouse would be prejudiced by the appeal to the extent that the wrong could not be remedied upon retrial or unless the appealing spouse has clearly acquiesed [sic] in the judgment.").

[36] *See Irvin v. Ellis*, 13 S.W. 22, 23 (Tex. 1890) ("'An estoppel *in pais* is the effect of the voluntary conduct of a party, whereby he is precluded, both at law and in equity, from asserting the rights which might, perhaps, have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who, on his part, acquires some

12

## B. The Divorce Context Presents Unique Concerns

Acceptance-of-benefits issues are disproportionately represented in marital-dissolution cases. The doctrine's prevalent application in this context no doubt derives from the relatively unique nature of the proceeding, which involves division of shared interests.[37] Because judgments in marital-dissolution cases typically divide assets in which a party's right to possession and control precedes the final decree, invoking estoppel based on dominion over that property while the litigation is ongoing presents a more complex scenario than other civil disputes.

In considering the acceptance-of-benefits doctrine in a marital-dissolution case, one court explained:

> By its very nature, a divorce action, insofar as the subject at hand is concerned, is in a somewhat different category from most civil litigation. Whatever the division that is made of the community property . . . the court is dealing with rights which arise out of the marriage and the prevailing party will usually only be acquiring property rights which to some degree were already owned. Until the divorce is rendered, most of the property interests of the husband and wife are held in amalgamated form and the separate rights of the parties are inchoate until there is a judicial act of severance which pulls out of the amalgam the separate rights that are to control in the future. Usually neither party gains by the divorce decree; almost invariably there is a net loss to the amalgam of rights because of the costs of litigation.[38]

---

corresponding right, either of property, of contract, or of remedy.'" (quoting *Bridges v. Johnson*, 7 S.W. 506, 507 (Tex. 1888), and citing *Bynum v. Preston*, 6 S.W. 428, 430 (Tex. 1887))); *Edwards v. Dickson*, 2 S.W. 718, 720-21 (Tex. 1886) (same).

[37] 6 ROY W. MCDONALD & ELAINE A. CARLSON, TEX. CIV. PRAC. § 10:4 (2d ed. rev. 2014) (observing that most of the case law on acceptance of benefits involves divorce appeals "due to the typical need of divorcees to expend assets received in the divorce to pay for the cost of divorce, accumulated debt, a new residence, new furniture, child care, new spouses, etc., and the natural inclination of people to take and use the personal property awarded to them").

[38] *Finck v. Finck*, 452 P.2d 709, 713 (Ariz. Ct. App. 1969).

Giving due regard to the equitable nature of the doctrine, the court opined that "[no] hard and fast

rule is appropriate" in considering whether an appealing party is estopped from seeking a

merits-based resolution to the litigation.[39]

Another court observed:

> Because of the unique status of a divorce judgment which divides property that is often jointly owned or at least has been jointly enjoyed during the marriage, joint or individual possession of an asset during the pendency of a divorce action does not constitute acceptance of a benefit.[40]

Discussing an earlier case on the same topic, the court said:

> [M]any of the benefits claimed to have been "accepted" were items that the appellant possessed before the trial—a house, furnishings, a car, and a bank account. We said that the appellant was not required to divest herself of these items in order to take an appeal seeking a new trial respecting the cash settlement covering the remainder of the parties' property.[41]

Another court admonished that a rule requiring "possession of all assets, regardless of their nature,

be frozen in the spouse to which they are awarded if an appeal is contemplated, is unreasonable,

unrealistic and unnecessary."[42]

The view that mere possession and control of community property does not rise to the level

of acceptance of benefits in marital-dissolution cases is not universal, however. Recently, the

---

[39] *Id.* at 712.

[40] *Spooner v. Spooner*, 471 N.W.2d 487, 489 (N.D. 1991).

[41] *Id.*; *accord O'Connor v. O'Connor*, 253 N.E.2d 250, 251-52 (Ind. 1969) ("It is true that the acceptance of financial benefits accruing to a spouse from the granting of a divorce may in some cases estop that spouse from the prosecution of an appeal. However, there are obvious limitations to this theory where the acceptance of certain financial benefits is the only evidence available to support the proposition that a spouse has unqualifiedly accepted the benefits of the decree and hence is precluded from appeal." (internal citations omitted)).

[42] *O'Connor*, 253 N.E.2d at 252.

Oklahoma Supreme Court dismissed an appeal under the acceptance-of-benefits doctrine when the appealing spouse had accepted real and personal property from the marital estate and nearly $1 billion in cash.[43]  In *Hamm v. Hamm*, the court held the appellant was not compelled to accept property under the divorce decree to avoid "'choos[ing] between food and the right to appeal,'" and the appellant had admitted she was not necessarily entitled to the entire award because there was a "small" risk her award could be reduced on appeal.[44]  The court thus concluded the judgment had been fully satisfied by payment and acceptance and was no longer appealable.[45]

The dissenting opinion in *Hamm* argued that "[r]igid application of the acceptance of benefits rule is no longer consistent with fundamental jurisprudence in marital dissolution appeals" given the parties' shared interests in property divided under the decree.[46]  The dissent commented:

> [Under the analysis in the majority opinion], Wife's only option was to reject the tendered check and to allow Husband absolute and unfettered control over ***their marital property*** during the pendency of what would be a lengthy appeal.
>
> . . . .
>
> Bright line application of the acceptance of benefits rule to divorce judgments is fundamentally flawed.  Unlike an award pursuant to a contractual obligation or judgment incidental to a personal injury, a divorce decree divides joint assets—***assets in which Wife had an existing ownership prior to the judgment***.  Allowing one party to maintain absolute control of all marital assets during the pendency of an

---

[43] *Hamm v. Hamm*, 350 P.3d 124, 124-25 (Okl. 2015) (per curiam).

[44] *Id.* at 125 (quoting *Stokes v. Stokes*, 738 P.2d 1346, 1347 (Okl. 1987)).

[45] *Id.* at 126.

[46] *Id.* at 128 (GURICH, J., dissenting).

15

appeal, to the detriment of the other spouse, is a draconian approach to divorce law comparable to the manner cases were resolved in centuries past.[47]

Consistent with the concerns expressed in the *Hamm* dissent, many jurisdictions treat prejudice or manifest intent to accept the judgment's validity as critical inquiries bearing on whether equity demands an estoppel.[48] The prejudice inquiry considers whether the benefits themselves—or the proceeds from their sale—remain available for redistribution or have been so dissipated, wasted, or otherwise converted as to prevent their recovery.[49] This approach fulfills the doctrine's equitable

---

[47] *Id.* (internal citations omitted).

[48] *See O'Connor v. O'Connor*, 253 N.E.2d 250, 252 (Ind. 1969) ("It is the considered opinion of this court that to constitute an acceptance of the benefits of divorce so as to preclude an appeal, the benefits 'accepted' must be of such a nature as to clearly indicate an intention on the part of that spouse to be bound by the divorce decree."); *Martin v. Martin*, 623 P.2d 527, 530 (Kan. Ct. App. 1981) (observing that "when the complaining party cannot show prejudice, the determinative factors of acquiescence in a domestic relations case revolve around the consistency with which the litigant is attacking the judgment or the severability of the provision of the judgment under which the benefits have been accepted or burdens assumed"); *Reynolds v. Reynolds*, 861 S.W.2d 825, 828-29 (Mo. Ct. App. 1993) ("'[T]he general rule pertaining to the acquiescence in judgments will not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved.'" (quoting *Smith v. Smith*, 702 S.W.2d 505, 506-07 (Mo. Ct. App. 1985))); *Liming v. Liming*, 723 N.W.2d 89, 97 (Neb. 2006) ("There must be unusual circumstances, demonstrating prejudice to the appellee, or a very clear intent to accept the judgment and waive the right to appeal, to keep an appellate court from reaching the merits of the appeal."); *Wetzel v. Wetzel*, 589 N.W.2d 889, 893 (N.D. 1999) ("There must be unusual circumstances, demonstrating prejudice to the movant, or a very clear intent on the part of the appealing party to accept the judgment and waive the right to appeal, to keep this court from reaching the merits of the appeal."); *Spooner v. Spooner*, 471 N.W.2d 487, 490 (N.D. 1991) ("It should be an unusual set of circumstances, one demonstrating prejudice to the movant, or a very clear intent on the part of the appellant to accept the judgment and waive the right to appeal, that keeps us from reaching the merits of an action.").

[49] *See Brackin v. Brackin*, 182 So. 2d 1, 5 (Fla. 1966) ("[C]ircumstances here show an extinguishment of the estoppel because the husband, by the wife's tender, can be placed in statu quo and the husband has not changed his position to his injury and damage by the wife's acts."); *In re Marriage of Brackett*, 722 N.E.2d 287, 294 (Ill. App. Ct. 1999) ("Petitioner has presented no reason why he would suffer a distinct disadvantage upon reversal. On remand the marital property can be redistributed in accordance with the Act."); *O'Connor*, 253 N.E.2d at 252 ("Factors to be considered are the very nature of the 'benefit' and its relation to the parties of the divorce, the likelihood that such 'benefits' will be dissipated and the use to which such 'benefits' are put by the spouse to which they are awarded."); *Amplatz v. Amplatz*, 289 N.W.2d 164, 164 (Minn. 1980) ("However, it now appears that the policy reasons supportive of the estoppel principle are no longer as compelling. Instead, a more rational approach would require an examination as to whether, by such acceptance, the party intended to acquiesce in the judgment and whether, in the event the judgment is ultimately reversed or modified, the assets have not been so dissipated as to prevent their recovery."); *Spooner*, 471 N.W.2d at 490 ("Acceptance of benefits will seldom be prejudicial to the movant if either the benefits themselves or the proceeds from their sale remain available for redistribution in subsequent proceedings."); *see also Dial v. Dial*, 44

16

objective, because divorce judgments frequently involve equitable distribution of jointly owned property that *necessarily* will be in one party's possession and control at all stages of the litigation.[50]

Two states—Florida and Washington—have gone one step further in addressing this conundrum, adopting appellate rules expressly abrogating the acceptance-of-benefits doctrine in divorce cases.[51]

## C. *Carle*'s Progeny

Since we issued our opinion in *Carle*, Texas appellate courts have had many occasions to apply the acceptance-of-benefits doctrine, predominantly in domestic-relations cases. As the jurisprudence has ripened, additional "exceptions" have been identified, helping to blunt inequity that might otherwise result from an overly formalistic application of the doctrine. The exceptions most commonly discussed are the entitlement exception identified in *Carle* and an "economic-necessity" exception.[52] Other bases for avoiding an estoppel bar involve consumption

---

S.W.3d 768, 771 (Ark. Ct. App. 2001) (observing the wife's "acceptance of benefits pending appeal has not impeded our ability, nor should it impede the chancellor's ability, to effect an equitable division of property upon reversal" where the chancellor had equally divided marital property, returned all pre-marital property, and awarded no alimony or child support that might be affected by a change in the property division).

[50] *See Finck v. Finck*, 452 P.2d 709, 713 (Ariz. Ct. App. 1969); *Lemon v. Lemon*, 150 N.E.2d 608, 610 (Ill. 1958); *O'Connor*, 253 N.E.2d at 251-52; *Spooner*, 471 N.W.2d at 489; *see also Katz v. Katz*, 293 N.E.2d 904, 906 (Ill. App. Ct. 1973) ("The plaintiff makes the general argument that defendant has acquired property benefits by the judgment, but such contention is not support [sic] by the record. Defendant received nothing by the judgment that he did not have before the judgment was entered. All property held in joint tenancy was to be divided and held by the parties in tenancy in common.").

[51] FLA. R. APP. P. 9.600(c)(2) ("The receipt, payment, or transfer of funds or property under an order in a family law matter shall not prejudice the rights of appeal of any party."); WASH. R. APP. P. 2.5(b)(1) ("A party may accept the benefits of a trial court decision without losing the right to obtain review of that decision only . . . if the decision is one which divides property in connection with a dissolution of marriage, a legal separation, a declaration of invalidity of marriage, or the dissolution of a meretricious relationship.").

[52] *See, e.g.*, *Waite v. Waite*, 150 S.W.3d 797, 803 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Haggard v. Haggard*, 550 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1977, no writ).

of cash,[53] acceptance of property under a fraudulently procured agreed judgment,[54] and appeals of severable portions of the judgment.[55]

Under the economic-necessity exception, acceptance is not voluntary if made under financial duress, which exists when the appellant otherwise lacked sufficient funds to provide the necessities

---

[53] *See, e.g.*, *Leedy v. Leedy*, 399 S.W.3d 335, 342-43 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (appealing spouse failed to prove the marital estate was large enough that accepting a cash payment would not be prejudicial in the event of a remand); *Demler v. Demler*, 836 S.W.2d 696, 697-98 (Tex. App.—Dallas 1992, no writ) (wife expended funds from a savings account but would have sufficient assets to cover a possible reimbursement of the money in the account and other assets could be sold to prevent prejudice to the husband if the judgment were reversed), *disapproved of on other grounds*, *Dallas Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382, 386-87 (Tex. 1997); *Haggard*, 550 S.W.2d at 377 (wife's use of cash could be accounted for on redistribution of the property, because the amount was small in relation to the total estate, she could not be awarded less than that amount on redivision, and other assets could be sold to account for the dissipation).

[54] *See, e.g.*, *Wheeler v. Wheeler*, 713 S.W.2d 148, 151 (Tex. App.—Texarkana 1986, writ dism'd) (wife not estopped from pursuing her appeal based on "exercise of dominion and control over the assets awarded to her and her acceptance of the benefits of the divorce judgment" because she alleged fraud and misrepresentation in formation of the parties' settlement agreement); *Ragsdale v. Ragsdale*, 520 S.W.2d 839, 844 (Tex. Civ. App.—Fort Worth 1975, no writ) (wife's acceptance of community property under an agreed property division procured by fraud did not preclude bill of review); *McFarland v. Reynolds*, 513 S.W.2d 620, 625 (Tex. Civ. App.—Corpus Christi 1974, no writ) ("[T]he acceptance by appellant of the community property disposition made in the judgment that terminated the marriage pursuant to an agreement with appellee does not estop her, as a matter of law, from a review of that disposition if she was lead into the agreement through fraud and misrepresentation on the part of appellee and through no fault or negligence on her part."). *But see Biggs v. Biggs*, 553 S.W.2d 207, 210 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ dism'd) ("We hold that a divorce judgment may not be set aside by bill of review where the complainant has voluntarily accepted the benefits of the judgment, under no financial compulsion to do so, continues to voluntarily accept those benefits after the alleged fraud is discovered and bill of review filed, and where the rights of the other spouse would be prejudiced if the judgment were set aside.").

[55] *See, e.g.*, *Hornblower, Weeks, Noyes & Trask, Inc. v. Reedy*, 587 S.W.2d 433, 435 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.) (even if acceptance-of-benefits applied, the controversy was not moot because the ultimate question in the appeal was still at issue and distinct from the benefits accepted); *Lipshy v. Lipshy*, 525 S.W.2d 222, 224 (Tex. Civ. App.—Dallas 1975, writ dism'd) ("Issues relating to custody of children are severable from issues relating to the decree of divorce, division of property, and other matters."); *cf. Williams v. Lifecare Hosps. of N. Tex., L.P.*, 207 S.W.3d 828, 834-35 (Tex. App.—Fort Worth 2006, no pet.) (withdrawal of entire compensatory damages award precluded appeal of alleged error in jury submissions affecting punitive damages because new trial could not be held solely on the issue of punitive damages; both compensatory and punitive damages would be at issue in a new trial).

of life.[56]  Characterization of economic necessity as an "exception" appears to be a misnomer of sorts, because rather than *excusing* a voluntary acceptance, it recognizes there is no contradiction in pursuing an appeal—and thus no estoppel—if acceptance was not voluntary.  Absent voluntariness, the acceptance-of-benefits doctrine simply does not apply.  But in characterizing economic necessity as an exception to the rule, some courts have shifted the burden of disproving voluntariness to the appealing party,[57] rather than requiring the complaining party to establish the matter to invoke an estoppel in the first instance.[58]  In this case, the court of appeals held (1) Kramer waived the economic-necessity exception due to inadequate briefing, (2) the record did not bear evidence of financial duress, and (3) to the contrary, the record reflected an award of "substantial assets" in addition to the income-producing property she had voluntarily accepted.[59]

The cases declining to apply the acceptance-of-benefits doctrine when fraudulent inducement is implicated contain little analysis (which is typical of cases applying the acceptance-of-benefits doctrine), but the principle appears to derive from the notion that being deceived into extracting the benefits of a judgment does not equate to voluntary acceptance.

---

[56] *See, e.g.*, *Trevino v. Trevino*, 555 S.W.2d 792, 795-96 (Tex. Civ. App.—Corpus Christi 1977, no writ); *Haggard*, 550 S.W.2d at 376; *McCartney v. Mead*, 541 S.W.2d 202, 205 (Tex. App.—Houston [1st Dist.] 1976, no writ); *see also Rose v. Rose*, 598 S.W.2d 889, 893 (Tex. Civ. App.—Dallas 1980, writ dism'd w.o.j.).

[57] *See, e.g.*, *Argovitz v. Argovitz*, 14-04-00885-CV, 2005 WL 2739152, at *4 (Tex. App.—Houston [14th Dist.] Oct. 25, 2005, no pet.) (mem. op.); *Waite*, 150 S.W.3d at 799.

[58] *Coplin v. Coplin*, 579 S.W.2d 278, 279 (Tex. Civ. App.—Dallas 1979, no writ) (motion to dismiss failed to establish estoppel because it lacked allegations concerning the appellant's economic circumstances, which was pertinent to the issue of voluntariness, and failed to establish prejudice because the amount the appellant consumed was very small in relation to the overall marital estate).

[59] 2014 WL 3809759, at *4, ___ S.W.3d ___ (Tex. App.—Austin 2014).  The court does not explain how Kramer could have avoided the acceptance-of-benefits issue by using other assets awarded to her to pay for necessities. We presume, however, that the court was referring to Kramer's separate-property estate.

19

The cash-benefits and severability exceptions focus on the absence of prejudice. Cash is fungible, and if it can be restored or otherwise taken into consideration in redivision of the marital estate, use of cash does not prejudice the nonappealing party and does not bar an appeal.[60] In this case, the court of appeals narrowly construed the exception and found it inapplicable because Kramer also assumed possession and control over non-cash assets.[61] Thus, the court did not consider Kramer's ability to restore the rental property and any derivative proceeds to the marital estate for redivision, if her appeal proves successful.

The severability exception insulates some appellate issues from the estoppel effect that may ensue from accepting benefits under a severable portion of the judgment.[62] Kramer attempted to rely on this concept to salvage her appeal of the sanctions, attorney-fees, child-custody, and child-support orders. After the court of appeals dismissed the entire appeal on mootness grounds, Kramer moved for rehearing, arguing that accepting assets did not moot the controversy as to issues distinct from the property division. The court of appeals nevertheless stood firm on the holding that the entire case was moot, because Kramer had not asserted severability in response to the motion to dismiss.[63]

---

[60] *See, e.g.*, *Demler v. Demler*, 836 S.W.2d 696, 698 (Tex. App.—Dallas 1992, no writ) (acceptance of cash benefits does not necessarily prejudice the nonappealing party's rights; no prejudice if appealing party's indisputable share of the community estate would be sufficient to secure reimbursement on reversal of the judgment), *disapproved of on other grounds*, *Dallas Mkt. Ctr. Dev. Co. v. Liedeker*, 958 S.W.2d 382 (Tex. 1997).

[61] 2014 WL 3809759, at *3, ___ S.W.3d at ___; *see also White v. White*, No. 14-14-00593-CV, 2016 WL 93694, at *4-5 (Tex. App.—Houston [14th Dist.] Jan. 7, 2016, no pet.) (mem. op.).

[62] *See Lipshy v. Lipshy*, 525 S.W.2d 222, 223-24 (Tex. Civ. App.—Dallas 1975, writ dism'd).

[63] 2014 WL 5420411, at *1, ___ S.W.3d ___ (Tex. App.—Austin 2014).

20

While recognized exceptions facilitate more equitable outcomes, courts often construe them narrowly, as the court of appeals did in this case. If voluntary acceptance of benefits is established merely by securing or retaining possession and control of community property, and exceptions are stingily applied,[64] an unwarranted risk arises that "the practicalities of life after divorce will force many appellants to accept some benefits and run the risk of dismissal."[65] Suffice it to say that, under some views of the doctrine, an estoppel bar is easy to establish and difficult to avoid in family-law cases. Cognizant of the realities and peculiarities of the marital-dissolution context,[66] other cases have approached the matter more equitably, focusing on the existence of prejudice.[67]

---

[64] *See, e.g.*, *Colburn v. Colburn*, 14-13-00680-CV, 2015 WL 393228, at *3 (Tex. App.—Houston [14th Dist.] Jan. 29, 2015, no pet.) (mem. op.); *F.M.G.W. v. D.S.W.*, 402 S.W.3d 329, 333-34 (Tex. App.—El Paso 2013, no pet.); *Argovitz v. Argovitz*, 14-04-00885-CV, 2005 WL 2739152, at *4 (Tex. App.—Houston [14th Dist.] Oct. 25, 2005, no pet.) (mem. op.); *Waite v. Waite*, 150 S.W.3d 797, 804-07 (Tex. App.—Houston [14th Dist.] 2004, pet. denied); *Bloom v. Bloom*, 935 S.W.2d 942, 947-48 (Tex. App.—San Antonio 1996, no writ); *Morgan v. Morgan*, 725 S.W.2d 485, 487 (Tex. App.—Austin 1987, no writ); *Johnson v. Johnson*, 584 S.W.2d 307, 309 (Tex. Civ. App.—Texarkana 1979, no writ); *Roye v. Roye*, 531 S.W.2d 242, 244 (Tex. Civ. App.—Tyler 1975, no writ).

[65] 6 ROY W. MCDONALD & ELAINE A. CARLSON, TEX. CIV. PRAC. § 10:8 (2d ed. rev. 2014).

[66] *See Gordon v. Gordon*, 545 P.2d 328, 333 (Kan. 1976) ("[W]e have concluded that the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved.").

[67] *See, e.g.*, *Rose v. Rose*, 598 S.W.2d 889, 893 (Tex. Civ. App.—Dallas 1980, writ dism'd w.o.j.) (no estoppel absent prejudice from the acceptance of veteran's benefits); *Hornblower, Weeks, Noyes & Trask, Inc. v. Reedy*, 587 S.W.2d 433, 435 (Tex. App.—Dallas 1979, writ ref'd n.r.e.) ("Estoppel does not apply unless the other party would be prejudiced by the appeal to the extent that the wrong could not be remedied upon retrial or unless the appealing party has clearly acquiesced in the judgment."); *Coplin v. Coplin*, 579 S.W.2d 278, 279 (Tex. Civ. App.—Dallas 1979, no writ) (wife sold personal property awarded to her, deposited the proceeds into a savings account and used funds from the account, but the amount at issue was "a relatively small item in proportion to [the total marital estate]" and no evidence showed she would not be entitled to at least that amount on redistribution of the estate); *Biggs v. Biggs*, 553 S.W.2d 207, 210 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ dism'd) (divorce judgment may not be set aside on bill of review if benefits voluntarily accepted without financial compulsion were retained after discovering alleged fraud and spouse's rights would be prejudiced if the judgment were set aside); *Haggard v. Haggard*, 550 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1977, no writ) ("[A] spouse should not be estopped from appealing an award pursuant to a divorce unless the other spouse would be prejudiced by the appeal to the extent that the wrong could not be remedied upon retrial or unless the appealing spouse has clearly acquiesed [sic] in the judgment.").

21

Divorce cases involving acceptance-of-benefits claims present myriad factual scenarios and multi-faceted aspects. Attempting to distinguish or reconcile the developed case law would prove futile and would not benefit the analysis, so we do not undertake that task. But two cases starkly illustrating the divide are emblematic of the jurisprudential spectrum.

In *Roye v. Roye*, the husband was awarded a pick-up truck, household furnishings in his possession, and half the community funds held in the court's registry.[68] The court held the husband was not entitled to these *specific* items as a matter of right and that his retention of these items, therefore, estopped his appeal from the property division.[69] The court observed that, under a just-and-right division "neither party is necessarily entitled to insist upon a certain amount of property . . . as a matter of right."[70] Accordingly, in a new trial "the court would still be free to divide all the property as it deemed just, subject only to review for abuse of discretion[, and] Appellant might or might not receive the same property as he was awarded under this divorce decree."[71]

Despite the court's acknowledgment that the voluntary-acceptance doctrine "is based on the principle of estoppel," *Roye* reflects a rigid application of the doctrine that does not consider the existence of disadvantage to the nonappealing party.[72]

---

[68] 531 S.W.2d 242, 243 (Tex. Civ. App.—Tyler 1975, no writ).

[69] *Id.* at 244.

[70] *Id.*

[71] *Id.*

[72] *Id.*

In contrast, the court in *Haggard v. Haggard* allowed an appeal to proceed despite the appellant's acceptance of $400 under the judgment, noting "she was then without sufficient funds to provide the necessities of life."[73] The court observed that cases issued after *Carle* held that financial distress vitiated the voluntariness of acceptance,[74] but the court's holding did not rest on this basis.

Rather, the court expressed concern that "strict application of the *Carle* rule can lead to harsh results and does not seem to be consistent with more recent, enlightened decisions in this area."[75] The court criticized cases applying the acceptance-of-benefits doctrine restrictively, observing "[t]he *Carle* court was ultimately concerned with possible prejudice to the appellee" and whether the appellant could return funds accepted, so the trial court would be able to render a different division of the community property on remand.[76] Though it is "'most obvious'" that a spouse would be able to use a marital asset for necessities while appealing the judgment, the court said the right to appeal is not conditioned on litigants divesting themselves of jointly or individually possessed assets awarded to them in the property division.[77]

Adopting an equitable view of *Carle*, the court held the acceptance-of-benefits doctrine will bar an appeal only if "[a] spouse would be prejudiced by the appeal to the extent that the wrong

---

[73] 550 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1977, no writ).

[74] *Id.* (citing *Cherokee Nation v. United States*, 355 F.2d 945, 949 (Ct. Cl. 1966), and *McCartney v. Mead*, 541 S.W.2d 202, 205 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ)).

[75] *Id.*

[76] *Id.*

[77] *Id.* (quoting *Piper v. Piper*, 234 N.W.2d 621, 623 (N.D. 1975)).

23

could not be remedied upon retrial or unless the appealing spouse has clearly acquiesed [sic] in the judgment."[78] Neither possession of a portion of the community estate nor consumption of cash benefits is alone dispositive, the court explained.[79] Instead, the critical inquiry is whether the nonappealing spouse would be prejudiced by either.[80]

To that point, none of the husband's "real or personal property [was] being prejudiced by [the wife's] use of [the cash] while the appeal is pending."[81] Moreover, the trial court could take the $400 into consideration if the appeal resulted in a new division of assets, because "in the event of redivision, [the wife] will necessarily be awarded property worth more than $400" that could be sold if necessary to restore any dissipated value.[82] Describing *Haggard* as a "cash only" or "necessities" case, as Kastleman and some courts have, ignores the case's fundamental holding that prejudice is an essential element of the acceptance-of-benefits doctrine.

In line with the view espoused in *Haggard*, we clarify that the acceptance-of-benefits doctrine is based on estoppel and rooted in equity. Thus, before denying a merits-based resolution to a dispute, courts must evaluate whether, by asserting dominion over assets awarded in the judgment under review, the appealing party clearly intended to acquiesce in the judgment; whether

---

[78] *Id.* (citing *Gordon v. Gordon*, 545 P.2d 328, 333 (Kan. 1976), *Brackin v. Brackin*, 182 So.2d 1, 5 (Fla. 1966), *In re Marriage of Fonstein*, 552 P.2d 1169, 1173 (Cal. 1976), *Piper v. Piper*, 234 N.W.2d 621, 623 (N.D.1975), *O'Connor v. O'Connor*, 253 N.E.2d 250, 251-52 (Ind. 1969), *Kassebaum v. Kassebaum*, 135 N.W.2d 704, 705-06 (Neb. 1965), *Bohl v. Bohl*, 32 N.W.2d 690, 692 (S.D. 1948), and *Katz v. Katz*, 293 N.E.2d 904, 906 (Ill. App. Ct. 1973)).

[79] *Id.* at 376-77.

[80] *Id.*

[81] *Id.* at 377.

[82] *Id.*

24

the assets have been so dissipated as to prevent their recovery if the judgment is reversed or modified; and whether the opposing party will be unfairly prejudiced. Equity simply will not tolerate a Catch-22 that involves a choice between relinquishing possession and control of community property and relinquishing the right to appeal. Our holding today is also in keeping with the policy that "'an adjudication on the merits is preferred in Texas.'"[83]

With this clarification, we also bring the voluntary-acceptance doctrine in line with recent efforts to mitigate the harshness of the voluntary-payment rule, which represents the other side of the acceptance coin. Under the voluntary-payment rule, "a judgment debtor's voluntary payment and satisfaction of an adverse judgment moots the controversy, waives the debtor's right to appeal, and requires dismissal of the case."[84] The purpose of the voluntary-payment rule is "'to prevent a party who has freely decided to pay a judgment from changing his mind and seeking the court's aid in recovering the payment[, because a] party should not be allowed to mislead his opponent into believing that the controversy is over and then contest the payment and seek recovery.'"[85] The rule is based on fairness to the judgment creditor and does not apply if the judgment creditor could not have been misled about the judgment debtor's intent to pursue an appeal.

---

[83] *Sutherland v. Spencer*, 376 S.W.3d 752, 756 (Tex. 2012) (quoting *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 86 (Tex. 1992)).

[84] *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002).

[85] *Id.* (quoting *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236 (Tex. 1982)).

25

Like the voluntary-acceptance doctrine, application of the voluntary-payment rule could produce harsh consequences;[86] accordingly, we held in *BMG Direct Marketing, Inc. v. Peake* that "the voluntary-payment rule is no longer outcome determinative when deciding whether a judgment voluntarily paid moots an appeal. Now, the payment of a judgment without an 'expressed intent' to continue an appeal moots the appeal, but payment with such an expression does not."[87] Under the modern view of the voluntary-payment rule, payment of a judgment does not bar prosecution of appeal unless the judgment debtor clearly misled the opposing party regarding the judgment debtor's intent to pursue an appeal.

With respect to the acceptance side of the estoppel coin, merely using, holding, controlling, or securing possession of community property awarded in a divorce decree does not constitute clear intent to acquiesce in the judgment and will not preclude an appeal absent prejudice to the nonappealing party. Appeals from other types of judgments may differ. Whether estoppel of the right to appeal is warranted involves a fact-dependent inquiry entrusted to the courts' discretion.[88]

### D. Factors Bearing on Acquiescence and Prejudice

While definitive, bright-line rules are hard to come by in matters of equity, several nonexclusive factors inform the estoppel inquiry, including:

---

[86] *See Cont'l Cas. Co. v. Huizar*, 740 S.W.2d 429, 430 (Tex. 1987) (holding voluntary payment of judgment without duress, although under protest, mooted appeal).

[87] 178 S.W.3d 763, 770 (Tex. 2005); *see also Miga*, 96 S.W.3d at 212.

[88] *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998) ("Matters of equity are addressed to the trial court's discretion.").

- whether acceptance of benefits was voluntary or was the product of financial duress;[89]

- whether the right to joint or individual possession and control preceded the judgment on appeal or exists only by virtue of the judgment;[90]

- whether the assets have been so dissipated, wasted, or converted as to prevent their recovery if the judgment is reversed or modified;[91]

- whether the appealing party is entitled to the benefit as a matter of right or by the nonappealing party's concession;[92]

- whether the appeal, if successful, may result in a more favorable judgment but there is no risk of a less favorable one;[93]

- if a less favorable judgment is possible, whether there is no risk the appellant could receive an award less than the value of the assets dissipated, wasted, or converted;[94]

---

[89] *See Cooper v. Bushong*, 10 S.W.3d 20, 23 (Tex. App.—Austin 1999, pet. denied) ("Acceptance of benefits due to financial duress or other economic circumstances does not constitute voluntary acceptance."); *Haggard v. Haggard*, 550 S.W.2d 374, 376 (Tex. Civ. App.—Dallas 1977, no writ) (same); *Irvin v. Ellis*, 13 S.W. 22, 23 (Tex. 1890) ("'An estoppel *in pais* is the effect of the voluntary conduct of a party.'") (quoting *Bridges v. Johnson*, 7 S.W. 506, 507 (Tex. 1888), and citing *Bynum v. Preston*, 6 S.W. 428, 430 (Tex. 1887))) .

[90] *See Haggard*, 550 S.W.2d at 376 (recognizing the significance of the right to joint or individual possession of community-estate assets while the divorce case is pending).

[91] *See Morgan v. Morgan*, 725 S.W.2d 485, 487 (Tex. App.—Austin 1987, no writ) ("It would be impossible for the trial court to make further orders dividing the community property here because the property awarded to appellant has been dissipated, assets converted, and money spent or reinvested by appellant.").

[92] *Carle v. Carle*, 234 S.W.2d 1002, 1004 (1950).

[93] *Stubbs v. Stubbs*, 671 S.W.2d 70, 72 (Tex. App.—Dallas 1984) (wife challenged settlement agreement awarding her a forty percent interest in an apartment complex, and in an appeal challenging the settlement, the court found no estoppel bar because the husband did not dispute she was entitled to at least forty percent, so appeal for further recovery was not barred), *aff'd*, 685 S.W.2d 643 (Tex. 1985).

[94] *See Haggard*, 550 S.W.2d at 377; *cf. McCartney v. Mead*, 541 S.W.2d 202, 205 (Tex. Civ. App.—Houston [1st Dist.] 1976, no writ) ("[R]egardless of the ultimate decision on appeal, [the appealing party] will own enough assets to pay the costs which might be adjudged against her.").

- whether the appellant affirmatively sought enforcement of rights or obligations that exist only because of the judgment;[95]

- whether the issue on appeal is severable from the benefits accepted;[96]

- the presence of actual or reasonably certain prejudice; and

- whether any prejudice is curable.[97]

These factors—which address concerns reflected in the case law—may overlap to varying degrees, and one or more may be dispositive, depending on the circumstances. For example, absence of prejudice should prevent the doctrine's application in most cases, while the existence of prejudice may not be sufficient if, for example, acceptance was compelled by economic necessity.[98] Moreover, mere deprivation of possession, use, and enjoyment of property that had been jointly owned is not, in and of itself, sufficient to constitute prejudice.

---

[95] *See F.M.G.W. v. D.S.W.*, 402 S.W.3d 329, 332 (Tex. App.—El Paso 2013, no pet.) (appellant filed a separate action against former spouse for money damages to repair property awarded to her in the decree).

[96] *Compare Lipshy v. Lipshy*, 525 S.W.2d 222, 224 (Tex. Civ. App.—Dallas 1975, writ dism'd) ("Issues relating to custody of children are severable from issues relating to the decree of divorce, division of property, and other matters.") *with Clark v. Clark*, 362 S.W.2d 655, 657-58 (Tex. Civ. App.—Houston 1962, no writ) ("Having voluntarily accepted the part of the community property consisting of the home and its contents, appellant may not now complain of the disposition of another single item of community property and limit her appeal, assignments of error, and prayer for relief thereto.").

[97] *See Haggard*, 550 S.W.2d at 377; *see also Concord Oil Co. v. Alco Oil & Gas Corp.*, 387 S.W.2d 635, 639 (Tex. 1965) ("An essential element of estoppel is that the party relying on an estoppel must have acted on it to his prejudice.").

[98] In comparison, outside the marital-dissolution context, economic necessity may be unavailing unless the appellee caused the appellant's financial distress. *See Gray Law, L.L.P. v. T & H Partners, Ltd.*, 2-08-387-CV, 2009 WL 2414298, at *3 (Tex. App.—Fort Worth Aug. 6, 2009, pet. denied) (mem. op.) (citing *Deer Creek Ltd. v. N. Am. Mortg. Co.*, 792 S.W.2d 198, 203 (Tex. App.—Dallas 1990, no writ), and *Gaspard v. Logix Commc'ns Corp.*, No. 14-00-00688-CV, 2001 WL 1590080, at *2 (Tex. App.—Houston [14th Dist.] Dec. 13, 2001, no pet.) (not designated for publication)).

## E. Application

Kastleman asserts Kramer is estopped from appealing the property division in the divorce decree because she accepted certain benefits with regard to the division of property. He alleges that, before and after the trial court rendered the final divorce decree, (1) she accepted ownership and control of all the real property awarded to her, which the trial court found to be valued at greater than $1 million and Kastleman says is closer to $5 million; (2) by virtue of the parties' settlement agreement, she accepted general and limited partnership interests that had been held as assets by corporations Kastleman claimed as his separate property; (3) she collected at least $20,000 per month from community-property apartment complexes, starting approximately one year before the final divorce decree was rendered; (4) she refinanced loans secured by the apartment complexes in compliance with a requirement in the divorce decree;[99] and (5) she asked, during a court hearing, for an opportunity to retrieve personal property awarded to her in the settlement agreement, because the property had been left behind in a condominium Kastleman was selling. Based on these acts of dominion over the property awarded in the divorce decree, Kastleman contends Kramer clearly acquiesced in the judgment.

With regard to prejudice, Kastleman contends he lost executive rights and control over management of the community property, explaining he was denied the opportunity to determine whether to alienate the rental property as market values ebbed and flowed in the years following the settlement agreement's execution. He also asserts that, by virtue of the parties' settlement

---

[99] The decree ordered Kramer to refinance all outstanding third-party debt secured by the rental properties "within 120 days" from the filing of specified tax returns. The decree ordered the real property securing the debt to be sold if Kramer "fail[ed] to refinance any such debt within the allotted time."

29

agreement, "substantial assets that belonged to Mr. Kastleman's corporate entities, the stock of which had been adjudicated his separate property, were transferred to, and accepted by Ms. Kramer." Though the assets may have been community property, Kastleman asserts irremediable prejudice because "[t]he loss of the general partnership interests cannot be fully restored because no Court [sic] can fashion an order that allows Mr. Kastleman, through his corporate entity, to go back in time and exercise the rights of a general partner for the time period Ms. Kramer has controlled the assets."

Kramer does not dispute she voluntarily accepted possession and control of community property awarded to her in the decree and rental proceeds from that property. But, mere acceptance, possession, and control of community property does not equate to acquiescence.

Kastleman complains, however, that Kramer's efforts to "enforce" the settlement agreement with respect to dishes, china, and a dining room table and chairs validated the agreement and the judgment that subsequently adopted it. During a hearing to cancel a *lis pendens* on a condominium allocated to Kastleman, Kramer requested an opportunity to retrieve the items awarded to her because those items had been left behind when Kastleman vacated the parties' condominium in connection with its imminent sale. Characterizing Kramer's actions as seeking "enforcement" is questionable, but ultimately immaterial. Unless someone secured the property, it would likely have been lost to the marital estate; consequently, actions Kramer took to preserve those assets visit no prejudice on Kastleman in the event of remand.

The same is true with respect to the Kramer's actions in refinancing loans secured by the rental property. The decree mandated such action upon pain of forced sale; the apartment complexes

30

apparently remain available to be returned to the marital estate; and no prejudice to Kastleman is apparent.

Though the parties dispute whether Kramer's right to the partnership interests preceded or derives from the divorce decree, there is no evidence the partnership interests and assets cannot be returned and taken into account in a new just-and-right division, if Kramer were to succeed on the merits of her appeal. If Kastleman is correct that the trial court could not award the partnership interests to Kramer following reversal and remand, Kastleman certainly could not be said to be disadvantaged by restoring those assets to him. Though we do not foreclose the possibility that prejudice might arise from temporary loss of control over estate assets, Kastleman's claims of prejudice in this case are entirely speculative.[100]

Kastleman, moreover, is satisfied with the distribution of property awarded to Kramer, both as to the type and share of the community estate. In fact, he insists that she keep it permanently. Evidently, the assets are not so unique that Kastleman would be disadvantaged by their permanent loss, nor is there evidence that Kastleman's future interests are prejudiced by the loss of temporary possession and control.

By appealing, Kramer is taking the chance she will get a more favorable judgment on redivision of the property (if Kastleman has concealed assets as she alleges) or that she will, at least, get no less in a just-and-right redivision of the estate.[101] But because a successful appeal means the

---

[100] *See HMC Hotel Props. II Ltd. P'ship v. Keystone-Tex. Prop. Holding Corp.*, 439 S.W.3d 910, 916 (Tex. 2014) (speculative evidence is no evidence).

[101] *See Stubbs v. Stubbs*, 671 S.W.2d 70, 72 (Tex. App.—Dallas 1984), *aff'd*, 685 S.W.2d 643 (Tex. 1985).

entire marital estate will be subject to a just-and-right division, she may get more or less; she may get the same property or something else. Yet Kastleman would be prejudiced by Kramer's successful appeal only if Kramer receives a lesser share of the estate assets on redivision of the estate *and* she would be unable to make up the difference through reimbursement to the estate or by sale of assets awarded to her. Though Kastleman argues Kramer has accepted possession and control of nearly half of the estate's undisputed value, he does not dispute that the rental payments Kramer accepted constitute a relatively small portion of the estate or that she could restore the value of those proceeds if the marital assets were divided anew. Nor is there evidence or allegation that the assets have been so dissipated, wasted, or converted as to prevent a just-and-right division of the property if the judgment is reversed or modified.

Finally, Kastleman argues Kramer is estopped from appealing whether the property settlement agreement is enforceable because (1) she agreed to the property division by executing the property settlement agreement, (2) she waited a year to revoke consent, and (3) after the agreement was signed, the community could claim no right to the income from the rental properties, meaning the community estate cannot be reconstituted. These matters, however, go to the merits of Kramer's appeal, not her right to a merits-based disposition of the appeal. On the merits, the court of appeals may conclude that the settlement agreement is enforceable and irrevocable, and Kramer has thereby waived the right to complain about the property division for that reason or another. But that inquiry is distinctly different from whether Kramer is barred from seeking a *determination* about whether the grounds alleged in avoidance of the agreement's enforcement are meritorious.

32

Based on the record before the Court, we conclude prejudice is lacking and the circumstances do not reflect Kramer's clear intent to acquiesce in the judgment's validity. The court of appeals therefore erred in dismissing Kramer's appeal.

### III. Conclusion

The acceptance-of-benefits doctrine is a fact-dependent, estoppel-based doctrine that focuses on unfair prejudice to the opposing party. Courts must therefore refrain from adherence to formulaic principles and hard-line rules that are inconsonant with the doctrine's equitable nature.

We hold that a merits-based disposition must not be denied absent disadvantage to the opposing party and circumstances reflecting clear intent to acquiesce in the judgment's validity. This inquiry is informed by various factors, including the appealing party's ability to restore benefits that have been accepted. Because Kramer's dominion over marital assets does not rise to the level of an estoppel, we reverse the court of appeals' judgment and remand the case to that court for further proceedings.

 

 

 

 

 

 

_____

Eva M. Guzman
Justice

**OPINION DELIVERED:** January 27, 2017

33